| ELECTION YEAR | INCUMBENT | ELECTION STATUS | WINNER |
| --- | --- | --- | --- |
| 1972 | V. PHILLIPS | WC | WC |
| 1975 | H. JACKSON | U | JACKSON |
| 1979 | F. ST. CLAIR | WC | WC |
| 1981 | H. JACKSON | U | JACKSON |
| 1981 | C. PARRISH | WC | PARRISH |
| 1984 | R. STAMPER | WC | STAMPER |
| 1987 | C. PARRISH | U | PARRISH |
| 1990 | R. STAMPER | U | STAMPER |
| 1993 | S. MILLER | U | MILLER |
| 1993 | M. WHITE | U | WHITE |
| 1996 | R. STAMPER | WC | WC |

U = uncontested

WC = white challenger

Merilyn COOK, et al., Plaintiffs,

v.

ROCKWELL INTERNATIONAL CORPO-
RATION, a Delaware corporation, and
the Dow Chemical Company, a Delaware
corporation, Defendant.

Civil Action No. 90–K–181.

United States District Court,
D. Colorado.

Aug. 8, 1996.

Bruce H. DeBoskey, Steven W. Kelly, Silver & DeBoskey, Denver, CO, Stanley M. Chesley, Waite, Schneider, Bayless & Chesley, LPA, Cincinnati, OH, R. Bruce McNew, Greenville, DE, Ronald Simon, Connerton, Ray & Simon, Washington, DC, Daniel Satriana, Sean R. Gallagher, Hall and Evans, Denver, CO, Merrill Davidoff, Daniel Berger, Peter B. Nordberg, Berger & Montague, Philadelphia, PA, Robert, Golten, Boulder, CO, Kenneth A. Jacobsen, John D. Stoner, Christopher T. Reyna, Chimicles, Jacobsen & Tikellis, Haverford, PA, for plaintiffs.

Richard Kaufman, U.S. Attorney's Office, Denver, CO, Dana C. Lindsay, Office of Chief Counsel, U.S. DOE, Rocky Flats Field Office, Golden, CO, Joseph J. Bronesky, Christopher Lane, Sherman & Howard, Denver, CO, Mark S. Raffman, Patrick Hanlon, Washington, DC, Mark S. Lillie, Douglas J. Kurtenbach, Kirkland & Ellis, Chicago, IL, for defendants.

## MEMORANDUM OPINION AND ORDERS

KANE, Senior District Judge.

The United States Department of Energy ("DOE") is the owner of the Rocky Flats nuclear weapons production facility located northwest of Denver, Colorado. It contracted with Defendants, Rockwell International Corporation and The Dow Chemical Company, to operate Rocky Flats. Plaintiffs allege during operation of Rocky Flats, Dow and Rockwell released hazardous substances into the surrounding area damaging Plaintiffs' property and increasing their risk of adverse health consequences.

Pending are Plaintiffs' Supplemental Motion for Sanctions against the United States Department of Energy in Contempt (filed February 12, 1996); Dow's Motion for Protective Order (filed March 4, 1996); Department of Energy's Motion for a Protective Order (filed March 8, 1996); and Plaintiffs' Motion that the United States Department of Energy be Held in Contempt re: Document Requests dated June 23 and August 28, 1995 (filed April 5, 1996).

Trial is set for January 27, 1997.

### I. *Background.*

In my Memorandum Opinion and Order re Contempt dated November 13, 1996 ("Contempt Order"), I held DOE had failed substantially to comply in several respects with the Stipulated Order made an order of court on September 13, 1994. *Cook v. Rockwell Int'l Corp.,* 907 F.Supp. 1460, 1468 (D.Colo. 1995).

I ordered DOE to comply with the Stipulated Order and to pay Plaintiffs their reasonable fees, costs and expenses for all their efforts to secure production of documents in DOE's control from July 8, 1994 (the date DOE agreed to entry of the Stipulated Order) through November 13, 1996. I further ordered the parties to file a status report within forty-five days regarding compliance.

Specifically, I ordered DOE, within thirty days, to produce to Plaintiffs the following:

1. All documents not yet produced in response to Plaintiffs' letter of request of November 7, 1994;

2. All materials unaccounted for ("MUF") documents requested in Plaintiffs' letter dated December 14, 1994 relating to missing quantities of nuclear materials at Rocky Flats;

3. All documents not yet produced in response to Plaintiffs' request letter of November 13, 1994;

4. The 257 VAX computer tapes at Rocky Flats; and

5. All documents not yet produced in response to Plaintiffs' request letter to the Los Alamos National Laboratory ("LANL") dated December 14, 1994;

6. The Rocky Flats database located at LANL and requested by Plaintiffs in a letter dated November 8, 1995.

I further ordered the September 13, 1994 date of the original Stipulated Order changed to November 13, 1995 which new date would be the keystone date for determining compliance with the Stipulated Order.

I deferred any further order on issues of contempt or sanctions until I had viewed such status report.

At a status conference on November 14, 1995, I ordered the United States Attorney's Office to contact the Chief of Staff of DOE, or if unable to do so, to contact the Secretary of Energy for the purpose of designating an official of DOE to ensure compliance with the Stipulated Order and the Contempt Order.

On November 27, 1995, DOE filed a Notice of Compliance with the Court's Order of November 14, 1995 stating that Richard Rosenzeig, DOE Chief of Staff, had appointed Dana C. Lindsay, DOE Chief Counsel at Rocky Flats, as the person directly responsi-

ble for compliance with the Stipulated Order and the Contempt Order.

On December 13, 1995, DOE filed United States Department of Energy's Unopposed Motion for Extension of Time, requesting a nine day extension to December 22, 1995 to comply with the Contempt Order. The extension was requested in order to complete negotiations between Plaintiffs' counsel and DOE to establish a production schedule acceptable to Plaintiffs. On December 15, 1995, I granted the extension.

On December 22, 1995, DOE filed a Motion for Extension of time to Comply with Contempt Order. DOE stated, in addition to the document requests covered by the Contempt Order, Plaintiffs had made further requests for documents or finding aids commencing on August 17, 1995. DOE noted, since taking charge of document production for DOE on November 22, 1995, Lindsay had increased the resources in support of DOE's document production effort, including appointing twelve additional declassifiers and four administrative support staffers to assist in the declassification and sanitization of classified documents.

DOE's motion stated with regard to Plaintiffs':

1. November 7, 1994 request: DOE had produced all documents requested, including written explanations concerning the partial destruction of some of the documents in four of the sixty-nine files requested.

2. November 23, 1994 Request: DOE had produced all except sixteen of the ninety-eight requested documents, which sixteen could not be located.

3. December 14, 1994 Request for MUF documents: This involved the declassification and sanitization of over 11,000 pages of classified documents held at Rocky Flats. DOE stated, even with the resources added by Lindsay, it would take DOE until June 30, 1996 to declassify and sanitize the remaining MUF documents and that production would occur on a rolling production basis.

4. Request for VAX tapes: DOE could produce the 257 tapes in its possession but they would not be in readable form and DOE had made repeated attempts to bring the database on line to make the tapes readable. DOE had signed a contract with Digital Equipment Corporation ("DEC") in this regard. DOE requested until January 5, 1996 to provide Plaintiffs' counsel and the court with a report concerning the status of the VAX tapes.

5. Request for LANL Documents: This involved the production, bar coding and Bate stamping of 150,000 pages of documents. To expedite the production, DOE had entered a contract with IT/IS Litidex, a computerized litigation support firm to copy, Bate stamp, bar code and perform the Privacy Act review for these documents. DOE estimated the documents could be delivered to Plaintiffs on computer media by January 31, 1996 and the Privacy Act Review completed by February 21, 1996.

6. November 8, 1994 Request for Rocky Flats Database: The database was produced to Plaintiffs on November 1, 1995 on computer media.

In addition, Lindsay had on December 13, 1995, sent Plaintiffs' counsel a letter updating the status of document production and stating an extension until January 31, 1996 was needed to produce the balance of the documents.

DOE requested extensions to June 30, 1996 to declassify and sanitize the classified MUF documents, January 5, 1996 to file a report concerning the feasibility of bringing the VAX tapes on line and January 31, 1996 to produce the LANL documents on electronic media and the documents not yet produced outlined in Lindsay's December 13, 1995 status letter.

I set DOE's Motion for Extension of Time to Comply with Contempt Order for hearing on January 16, 1996.

On January 4, 1996, DOE filed U.S. Department of Energy's Status Report on Document Production. On January 12, 1996, Plaintiffs filed Plaintiffs' Status Report re: The United States Department of Energy's Compliance with the Court's Order dated November 13, 1995, Holding DOE in Contempt, and Plaintiffs' Response to DOE's Motion for Extension of Time.

On January 16, 1996, I held a hearing on DOE's Motion for Extension of Time to Comply with Contempt Order. I granted DOE an extension until January 31, 1996 to produce all documents not yet produced in response to Plaintiffs' request letter of November 7, 1994. I ordered all other documents, excluding the VAX computer tapes and the MUF documents, to be produced by February 1, 1996.

Concerning DOE's production of documents from Los Alamos National Laboratory (LANL), I directed the parties to submit a protective order regarding the Privacy Act to the court by Friday January 19, 1996. I stated if this was not accomplished I would draft my own order on Monday, January 22, 1996.

I ordered DOE to complete its searchable database on the VAX documents by March 15, 1996.

With regard to the MUF documents, I set a further hearing on Thursday, February 15, 1996. I stated:

> If there isn't a plan for declassifying these documents and turning them over by March 15, I want a specific proposal identifying who the people are that are making these decisions and the responsible people as to why it cannot be accomplished by that time. I want legal arguments on two considerations. One is the authority of this Court to require the Department of Energy to take over the defense of this case under 42 USC 2210(h). And, the other issue that I'm concerned about is the authority of this Court to order all of these documents impounded in the custody of the U.S. Marshal.

(Tr. Jan. 16, 1996 at 28–29.)

On January 22, 1996, the parties filed a Joint Stipulated Order regarding Production of Epidemiological Documents at LANL. I signed the order on that date.

On February 2, 1996, DOE filed United States Department of Energy's Notice of New Discovery Developments. DOE filed this document with reference to the January 16, 1996 order requiring it to prepare a plan to ensure the declassification of the 11,000 MUF documents by March 15, 1996, or, in the alternative, to explain why such declassification could not be completed by that date.

DOE noted it had previously estimated the MUF collection to consist of 11,000 pages of classified documents. On January 19, 1996, counsel for DOE was informed the actual number was between 400,000 and 500,000 pages. On February 2, 1996, DOE completed the count and advised counsel there were 670,000 pages of MUF documents requiring declassification.[1]

DOE stated, in response to the new development, Lindsay had increased the declassification staff from fourteen to twenty-eight. DOE stated it would present a plan on February 15, 1996 to comply with the January 16, 1996 order.

In addition, DOE reported counsel for Kaiser–Hill, the present operator of Rocky Flats, informed counsel for DOE on January 26, 1996 that 1,000 reels of microfilm containing documents were found at Rocky Flats. The documents were unclassified and each reel contained an index. DOE immediately assigned four individuals to copy the indices.

On February 1, 1996, DOE located an additional 500 reels for a total of 1,500. DOE intended to forward the indices to Plaintiffs' counsel after they were copied and the first shipment was to be mailed on February 5, 1996.

DOE had also located three platters. A platter is the center of a hard disc which holds all of the electrical charges and data on a hard disc. The platters operated on a DEC computer utilizing Saturn software. Neither the DEC computer nor the software exist currently.

On February 5, 1996, Plaintiffs' Response to DOE's "Notice of New Discovery Develop-

---

1. Dana Lindsay discusses in her affidavit attached to DOE's Corrected Status Report submitted on February 14, 1996 that on December 7, 1995, at a meeting, Plaintiff's counsel advised the request for MUF documents included "MUF-related" documents. She states it was only on January 22, 1996, she was informed by John Lazor and Dan Cannon of Head Quarters Office of Declassification that they had identified ten to twelve types of MUF documents. On February 2, 1996, a final tally of 677,211 pages of MUF documents was made.

ments" was filed. Plaintiffs asserted "it appears that for the better part of a year, DOE has permitted its counsel to serve, unwittingly, as the conduit for testimony and representations to this Court that DOE knew, or should have known, to be false." (Pls.' Resp. DOE's "Notice New Discovery Developments" at 1.) Plaintiffs demanded a fuller explanation from DOE and stated the development would affect their position as to the appropriate sanctions to be imposed on DOE.

## II. *Plaintiffs' Supplemental Motion for Sanctions against the United States Department of Energy.*

On February 12, 1996, Plaintiffs' Supplemental Motion for Sanctions against the United States Department of Energy was filed. Plaintiffs assert the Price–Anderson Act, 42 U.S.C. § 2210(h) and DOE's operating contracts with Defendants confer authority on DOE to control the defense of this case. They argue it is within my authority to (1) direct DOE to purge itself of contempt by exercising its right to control the litigation so that it might submit to an order imposing preclusive sanctions; (2) rely on the court's inherent power to impose such sanctions even if DOE did not assume the defense; (3) impose the sanction of default, or the striking of defenses on certain liability issues; (4) order the impoundment of documents by the United States Marshals.

Plaintiffs rely on the following provision of the Price–Anderson Act:

(h) Conditions of agreements of indemnification

The agreement of indemnification may contain such terms as the Commission or the Secretary, as appropriate, deems appropriate to carry out the purposes of this section. Such agreement shall provide that, when the Commission or the Secretary, as appropriate, makes a determination that the United States will probably be required to make indemnity payments under this section, the Commission or the Secretary, as appropriate, shall collaborate with any person indemnified and may approve the payment of any claim under the

agreement of indemnification, appear through the Attorney General on behalf of the person indemnified, take charge of such action, and settle or defend any such action. The Commission or the Secretary, as appropriate, shall have final authority on behalf of the United States to settle or approve the settlement of any such claim on a fair and reasonable basis with due regard for the purposes of this chapter. Such settlement shall not include expenses in connection with the claim incurred by the person indemnified.

42 U.S.C. § 2210(h).[2] They anticipate DOE's argument that under the statutory and contractual provisions, DOE has sole discretion to determine whether to undertake the defense of the action and that its decision is not subject to judicial review.

Plaintiffs acknowledge this might be true if DOE were not a contemnor. However, because DOE is a contemnor, Plaintiffs maintain the question is not one of judicial review but of remedy. Plaintiffs assert they do not seek a judicial determination whether any DOE decision concerning this litigation was within the agency's sound administrative discretion. Rather they ask me to order DOE to purge itself of contempt by exercising its lawful authority. Plaintiffs maintain I have this power in civil contempt proceedings because I may fashion any order which promotes remedial purposes of coercing compliance or compensating persons injured by the contemnor's conduct.

Plaintiffs' desire is that DOE take over the defense of the action, and, in doing so, submit to warranted dispositive sanctions. They acknowledge neither Federal Rule of Civil Procedure 37, which expressly provides for evidentiary sanctions but pertains to named parties, nor Rule 45, which pertains to non-parties but does not expressly provide for evidentiary sanctions, precisely fits this situation. However, Plaintiffs assert, under these circumstances, I may rely on inherent power to "fill the gap."

---

**2.** The Price–Anderson Act was enacted in 1957 as an amendment to the Atomic Energy Act to encourage private sector investment in the development of nuclear power by limiting the liability of private owners and operators in the event of a nuclear accident.

Plaintiffs review the factors that should be considered in the choice of sanctions against DOE as outlined in *Ehrenhaus v. Reynolds,* 965 F.2d 916, 921 (10th Cir.1992). They assert (1) they have suffered prejudice as a result of DOE's violations of the Stipulated Order, the Contempt Order and the January 16, 1996 order directing it to produce the MUF documents by March 16, 1996; (2) DOE has wrongfully and substantially interfered with the judicial process; (3) DOE's conduct merits a finding that it has acted willfully and in bad faith; (4) DOE has been warned that its conduct could result in preclusive evidentiary sanctions; (5) the inefficacy of any sanction short of default or the striking of defenses to cure the prejudice suffered by Plaintiffs.

In addition, Plaintiffs maintain I have general authority to order the U.S. Marshals Service to impound discovery-related documents and that Congress has expressly authorized United States Marshals to enforce court orders. *See* 28 U.S.C. § 566.

According to Plaintiffs: "Impoundment is especially justified here, where the record reflects apparent destruction of relevant documents by DOE during the course of this litigation, and where DOE's accounts of the nature and volume of responsive documents have been shown to be unreliable." (Pls.' Mem.Supp. Supplemental Mot. Sanctions at 24.) Plaintiffs suggest the classified documents, including the MUF documents, be impounded in the custody of the United States Marshals at the site pending the completion of DOE's declassification review. They fear moving classified documents from the site could further delay their production. Plaintiffs request that henceforth DOE access to the documents should be monitored and supervised by the United States Marshals, unless Plaintiffs and DOE agree to other arrangements. This, Plaintiffs suggest will "help ensure the integrity of the documents, while maintaining DOE's accountability for their production." (*Id.* at 25.)

On February 13, 1996, DOE filed its Status Report and Proposed Alternative Plans to Address Discovery Issues. On February 14, 1996, I granted DOE's Motion to File Corrected Status Report and Proposed Alternative Plans to Address Discovery Issues Pending.

In an affidavit attached to DOE's status report, Lindsay described DOE's production efforts and compliance with requests for production after the update provided at the January 16, 1996 hearing. She stated all nonclassified documents responsive to the pending requests had been identified or would be produced or available by March 15, 1996.

The report stated DOE had identified over 700,000 pages of documents responsive to Plaintiffs' requests for production which were currently classified. The figure included approximately 667,000 pages of MUF documents. Since November 1995, the documents had been undergoing a greatly expanded declassification and sanitization process with an increase of staff from 17 to 70 and a further anticipated increase to 82 by February 16, 1996.

At the current level of staffing and using current review procedures, DOE anticipated completion of the production process by October 7, 1996. Through a modified quality assurance process under consideration, the anticipated completion date could be moved up to August 8, 1996. DOE asserted the set date for production of March 16, 1996 could not be met.

The documents have been classified pursuant to The Atomic Energy Act of 1954 and Executive Order 12958. Bryan Siebert, Director of DOE's Office for Declassification, stated in an affidavit attached to the status report that he had determined the classified documents must undergo the declassification and/or sanitization process and that the processes currently used and proposed to be utilized were consistent with and required by DOE and Rocky Flats classification guidelines.

As an alternative to current procedures, DOE proposed it would expedite the clearance process for a reasonable number of individuals, in addition to the two representatives of Plaintiffs who already had appropriate clearance to review classified documents, to allow Plaintiffs' attorneys and expert witnesses access for a pre-declassification and/or

sanitization review of the classified documents. DOE submitted this review would provide for Plaintiffs' involvement in the identification and prioritization of documents subject to the declassification and/or sanitization process and potentially reduce the production schedule if some documents were determined by Plaintiffs to be of little or no use. Documents identified by Plaintiffs as priority would go to the head of the review and production line.

DOE offered another alternative plan for modification of the stipulation and discovery process. Under the plan, Plaintiffs and Defendants would designate attorneys and expert witnesses for expedited clearance processing. DOE would immediately provide two copies of classified documents and indices located in separate secure facilities for access and use by the parties for review and preliminary use by individuals holding clearances. The access would be granted while preserving the classified designation of the documents. Except for use by expert witnesses who had received clearances, parties would designate those documents they wished for further use in discovery or at trial. DOE would process those documents for declassification and/or sanitization. If there were any disagreement concerning this effort, upon written request, DOE would re-review the documents and render a final opinion on declassification and/or sanitization. The review would be subject to in camera review by the court.

As part of this proposed alternative plan, expert witness reports could be prepared both by identifying and containing the classified information and documents being relied upon. All reports and supporting documents should be provided for declassification and/or sanitization review of only those portions that contain or are derived from classified information. The results thereof would be returned to the submitting party and upon written request, be subject to a final re-review and opinion on the declassification and/or sanitization decision. The final review would be subject to in camera review by the court.

DOE stated certain privileges might apply to disclosure of classified documents and to any classified documents relied on or used by witnesses or in expert reports which might restrict their use in litigation.

On February 13, 1996, both DOE and Dow filed briefs addressing my authority to require DOE to take over the defense of the case and to impound documents into the custody of the U.S. Marshal. DOE asserts the Price–Anderson Act provides the Secretary of DOE with absolute discretion to determine whether to refer the defense of the case to the Attorney General. In these circumstances, DOE argues, the Administrative Procedure Act (APA), 5 U.S.C. § 701(a)(2), precludes judicial review of such determinations and, thus, does not authorize this court to order the government to take over the defense of this case.

DOE argues the fact that I have held it in contempt for failing to meet discovery obligations does not provide a basis for me to compel the Secretary to take an action committed to the agency's discretion by law. It contends that, in any event, such action would be meaningless because the effect of a determination that DOE should take over the defense of the case would be a substitution of counsel, not of party defendants. Thus, it states, my ability to enforce the contempt order with respect to DOE would not be affected.

Dow maintains I do not have the power to force DOE to take charge of this action for purposes of imposing "sanctions having an evidentiary effect" because, under the Federal Rules of Civil Procedure, such sanctions cannot be imposed upon the parties for the conduct of non-parties. Dow further states there is no precedent under the Price–Anderson Act or elsewhere empowering me to force DOE to take over this action so that such sanctions could be issued. It asserts the weight of authority demonstrates I lack the authority even to review a decision by the Secretary to "take charge" of an action under § 2210(h), much less force the Secretary to make such a decision. Finally, Dow urges me to examine the significance of the discovery at issue before issuing further sanctions.

While DOE agrees I have general authority to order the United States Marshal to impound discovery-related documents, it argues such impoundment is not warranted in this case. DOE maintains a few of the documents responsive to Plaintiffs' November 7, 1994 request were destroyed inadvertently and there has been no allegation nor finding that they were destroyed with wilful intent to circumvent the discovery process.

DOE further asserts impoundment, by placing the documents under seal, would make them inaccessible to employees at the Rocky Flats site and impede the ability of the current contractor and DOE to accomplish their environmental restoration and waste management activities. Alternatively, if the documents were to remain accessible but under the United States Marshal's control, a significant number of Marshal's service personnel would have to be deployed to the Rocky Flats site to maintain custody and control of the documents posing so many practical and logistical problems as to be infeasible. Similarly logistical issues would arise if the Marshals were to take custody and control of the large number of documents containing classified information.

At a hearing on February 15, 1996, Henry Solano, United States Attorney for the District of Colorado, representing DOE, iterated the classified documents under DOE's control required declassification review and DOE's two proposed alternative plans for focusing the declassification process.

Plaintiffs' counsel argued DOE had obstructed vital discovery in the case and continued to engage in a coverup, evidenced by its purporting to have only recently discovered the existence of 660,000 documents. Plaintiffs noted the 1994 Stipulated Order required DOE to search and identify every repository of Rocky Flats, including all old documents sent to federal record centers. Plaintiffs requested me to order the U.S. Marshal's Office to assume control of the documents and sought preclusive sanctions.

At the hearing, I granted Defendants and DOE twenty days to respond to Plaintiffs' Supplemental Motion for Sanctions against the United States Department of Energy and

Rockwell twenty days to brief the two issues on which I had requested authority.

I ordered Plaintiffs to submit a list of those individuals for whom they wanted security clearances to DOE and ordered DOE to handle the clearances on an expedited basis.

I deferred any further ruling but indicated I was considering evidentiary sanctions and referred the parties to *Mammoth Oil Co. v. United States,* 275 U.S. 13, 48 S.Ct. 1, 72 L.Ed. 137 (1927).

On February 26, 1996, Plaintiffs' Response to DOE's "Status Report and Proposed Alternative Plans to Address Discovery Issues" was filed. Plaintiffs assert DOE has not complied with the January 16, 1996 order to file "a plan for declassifying [the MUF] documents and turning them over by March 15." (Tr. Proceedings Mot.Ext. Time Jan. 16, 1996 at 28.)

Plaintiffs reject DOE's alternative proposals and its undertaking to complete its discovery responses by October 7, 1996. They state this would undo the Stipulated Order and shift to Plaintiffs the burden of purging DOE of contempt.

Plaintiffs reject DOE's proposal to allow Plaintiffs' representatives access to the data only in a classified setting because this would involve Plaintiffs' experts, consultants and counsel being forced to spend the next few months on site. They also find it unacceptable that DOE would vet their expert reports for classification purposes.

Plaintiffs assert they should be entitled to visit the plant and designate documents for declassification and production, a right already existing under the Stipulated Order. However, they maintain DOE should discharge its duty under the Stipulated Order to complete a declassification review.

Plaintiffs also argue DOE's status report does not afford a detailed explanation as to why the number of MUF documents was so grossly underestimated and why DOE took two weeks to disclose the discovery of the underestimation under the guise of wanting

to produce a precise count of the volume of MUF documents.[3]

On March 4, 1996, the Department of Energy's Memorandum of Law in Opposition to Plaintiffs' Motion for Supplemental Sanctions was filed. DOE urges me to deny Plaintiffs' request that it take over the defense of this lawsuit and/or become or be treated as a defendant so that I may then impose preclusive evidentiary sanctions against DOE. Restating its earlier arguments, DOE argues I lack the authority to require it, as a non-party, to take over the defense of the case or to treat DOE as a Defendant; and that because Congress has not waived the United States' sovereign immunity under the Price–Anderson Act, I lack the authority to make or treat DOE as a defendant.

DOE again asserts Plaintiffs' reliance on 42 U.S.C. § 2210(h) as authority for me to order DOE to take over the defense is misplaced. Under that section DOE may choose to "appear through the Attorney General on behalf of the person indemnified, take charge of such action, and settle or defend such action." DOE maintains the section delegates to DOE, rather than the court, the right to decide on a case-by-case basis whether to appear through the Attorney General on behalf of its contractors.

DOE further argues, because Plaintiffs chose not to sue the United States under the Federal Tort Claims Act ("FTCA"), the only relevant statute under which Congress has waived the United States' sovereign immunity, I lack jurisdiction to treat DOE as a party. Because Plaintiffs have never exhausted their administrative remedies under the FTCA, DOE argues, I have no subject matter jurisdiction over the United States as a party in any FTCA claim. DOE also states, contrary to Plaintiffs' assertion, it is not the "real party in interest" but is a separate entity from DOW and Rockwell.

DOE further opposes the sanctions Plaintiffs ask me to impose because, it states, it has been held in civil, rather than criminal, contempt. Civil contempt sanctions should pressure the contemnor to change its behavior and, unlike criminal contempt sanctions, should not be punitive for a completed act of disobedience. DOE points out, to compensate Plaintiffs for any injury resulting from DOE's delay in producing the relevant documents, I have ordered DOE to pay Plaintiffs' attorney fees, costs and expenses for all their efforts to secure the relevant documents, including their motion for contempt.

DOE concludes because I lack authority to require it to be a defendant or to assume control of the case, there is no basis for imposing sanctions, such as a default judgment or preclusive evidentiary sanctions, on it.

It cites legal precedent and principles of due process precluding a court from prejudicing a party's substantive rights unless the party itself has wilfully failed to comply with the court's order. DOE distinguishes the *Mammoth Oil* case, which, it maintains, reflects a narrow exception to the basic rule, that when the culpable non-party is the "principal representative" of a party, preclusive evidentiary sanctions may be appropriate.

In *Mammoth Oil,* the Court held a negative inference could be drawn against a civil defendant because of the failure of a non-party to testify to rebut the government's allegations. The opinion indicates the government had accused agents of the defendant corporation, including Sinclair, the non-party who failed to testify, of having conspired to defraud the government. *Mammoth Oil,* 275 U.S. at 36, 48 S.Ct. at 4. In concluding there had been no error in allowing the government to benefit from the negative inference produced by Sinclair's failure to testify, the Court recognized the government had "introduc[ed] evidence which, uncontradicted and unexplained, was sufficient to sustain its charge." *Id.* at 52, 48 S.Ct. at 10. The Court noted Sinclair was not only an agent of the Mammoth Oil Company, but also the

---

**3.** On February 29, 1996, DOE and Plaintiffs filed a Stipulated Order Regarding Production of Certain Records Kept at the Rocky Flats Environmental Technology Site. The stipulation states Plaintiffs requested DOE to produce certain electronic mail files ("e-mail") pursuant to the Stipulated Order of September 13, 1994 and the parties also contemplate the production of certain material stored on microfilm at Rocky Flats.

corporation's founder and "principle representative." 275 U.S. at 52, 48 S.Ct. at 10. As such, it was "as if [Sinclair] personally held the [fraudulent] lease [was the] defendant, and failed to testify." *Id.* at 52, 48 S.Ct. at 10.

DOE argues, although Plaintiffs may allege DOE has the real economic stake in the defense of this lawsuit, they have not and cannot claim DOE was the principal representative of Dow and Rockwell since DOE neither principally represents nor owns and controls Dow or Rockwell. Accordingly, DOE submits *Mammoth Oil* does not provide authority for me to impose preclusive sanctions on Defendants for the actions of DOE.

Finally, DOE argues the Atomic Energy Act, 42 U.S.C. § 2011 *et seq.*, prevents the disclosure of classified material and at this time much of the material that is the subject of discovery disputes is classified. DOE asserts, because the statutory presumption and privilege protecting the information must be maintained until the material is properly declassified, I may not impose evidentiary sanctions due to DOE's non-disclosure of privileged materials.

On March 4, 1996, Rockwell filed its opposition to Plaintiffs' motion for supplemental sanctions against DOE. In essence, Rockwell argues only a party to an action may "submit" to evidentiary sanctions, the striking of defenses or a default judgment and DOE is not a party to the lawsuit. Rockwell asserts the indemnity relationship between DOE and Rockwell does not provide justification for ignoring this critical point and treating Rockwell and DOE as if they were one entity for purposes of this motion.

Also filed on March 4, 1996 was Dow's Memorandum in Opposition to Plaintiffs' Motion for Sanctions and in Support of Dow's Motion for Protective Order. Dow addresses Plaintiffs' request that I direct DOE to assume the defense of this case and submit to entry of default on liability and other preclusive sanctions. In Dow's view, these requests for relief emanate from the contractual relationships between the DOE and Dow and Rockwell. It maintains because exclusive jurisdiction to resolve such contractual issues lies with the Court of Claims under the Tucker Act, I lack jurisdiction to grant the relief sought. Further, it asserts Plaintiffs in essence seek specific performance of a government contract, relief which Dow argues is not available against the government. *See Spectrum Leasing Corp. v. United States,* 764 F.2d 891, 893 n. 2 (D.C.Cir.1985). Finally, Dow contends Plaintiffs lack standing to seek any relief under the DOE contracts with Dow and Rockwell as they are not parties to those contracts.

On March 25, 1996, Plaintiffs' Reply Memorandum in Support of Plaintiffs' Supplemental Motion for Sanctions against the United States Department of Energy was filed. Plaintiffs refer to the five factors described in *Ehrenhaus v. Reynolds,* as "criteria for the district court to consider prior to imposing dismissal as a sanction" 965 F.2d at 921 and urge, based on the record, a default sanction or the striking of defenses to cure the prejudice suffered by Plaintiffs.

Plaintiffs maintain DOE has acted in concert with Dow and Rockwell and should not be treated as a Defendant, but as a contemnor who should compensate its victims. Plaintiffs reiterate their request for entry of default judgment, the striking of all defenses, or the entry of preclusive evidentiary sanctions on the issues of (1) releases of plutonium and other radionuclides from Rocky Flats; and (2) the health effects of exposure to plutonium and other radionuclides, issues relating to the MUF and LANL documents respectively.

Citing among other cases, *Mammoth Oil,* 275 U.S. at 51–53, 48 S.Ct. at 9–10. Plaintiffs argue DOE has failed to produce the MUF documents despite three court orders that these documents are relevant to the issue of releases of nuclear material from Rocky Flats, that they are within DOE's control and that DOE is the "principal representative" of the named Defendants. They assert imposing a default judgment or, at minimum, barring the defense from presenting any affirmative evidence on the issue of the releases of plutonium and other radionuclides, would prevent DOE from frustrating

Plaintiffs' ability to prosecute their claims in a timely way.

If sanctions short of default are imposed, Plaintiffs ask that evidentiary sanctions be entered with respect to the LANL documents. The Contempt Order found DOE to have failed substantially to comply with the Stipulated Order in failing to produce the LANL documents. *Cook v. Rockwell Int'l Corp.*, 907 F.Supp. at 1466. On January 31, 1996, DOE produced the LANL documents which include documents relating to studies which have examined the health effects of plutonium on humans. Plaintiffs claim this belated production does not cure the prejudice they have suffered because of the delay and that I should, at minimum, bar Defendants from contesting Plaintiffs' evidence regarding the health effects of exposure to plutonium and other radionuclides.

### Discussion of Plaintiffs' Supplemental Motion for Sanctions against DOE.

In the November 13, 1996 Contempt Order, I found DOE had failed substantially to comply with the Stipulated Order in several respects, ordered compliance with the Stipulated Order under a new time framework, ordered DOE to pay Plaintiffs their reasonable attorney fees, costs and expenses for all their efforts to secure production of documents in DOE's control from July 8, 1994 to the date of the Contempt Order, and ordered the parties to file within forty-five days a status report concerning compliance with Contempt Order and the Stipulated Order. I deferred any further order on issues of contempt or sanctions until I reviewed the status report.

On February 12, 1996, Plaintiffs filed their supplemental motion for sanctions against DOE, urging me to order DOE to exercise its powers under the Price–Anderson Act and DOE's operating contracts with Defendants to control the defense of this case so that it might submit to an order imposing preclusive sanctions; rely on inherent power

to impose such sanctions even if DOE did not assume the defense; impose the sanction of default, or the striking of defenses on certain liability issues; and order the impoundment of documents by the United States Marshals.

■ The Contempt Order was one finding DOE in civil contempt for having failed substantially to comply with the Stipulated Order in several respects outlined in the Contempt Order.

> The sanction of civil contempt serves two remedial purposes: (1) to enforce compliance with an order of the court, and (2) to compensate for losses caused by the noncompliance. The sanctions to be imposed are to be remedial or coercive, but not penal, and are to be adapted to the particular circumstances of each case.

*NLRB v. Monfort, Inc.*, 29 F.3d 525, 528 (10th Cir.1994) (citations omitted).

■ " '[I]n selecting contempt sanctions, a court is obliged to use the "least possible power adequate to the end proposed." ' " *Spallone v. United States*, 493 U.S. 265, 276, 110 S.Ct. 625, 632, 107 L.Ed.2d 644 (1990) (quoting *United States v. City of Yonkers*, 856 F.2d 444, 454 (2d Cir.1988)) (quoting *Anderson v. Dunn*, 19 U.S. (6 Wheat.) 204, 231, 5 L.Ed. 242 (1821)).

■ Having reviewed the extensive briefs and status reports filed by the parties relating to the issue of DOE's compliance with the Contempt Order and Stipulated Order, I conclude no further sanctions against DOE are warranted at this time. DOE has increased its declassification staff and expended significant additional resources in an effort to comply. It has and is taking affirmative steps to purge itself of contempt and to comply with the Stipulated Order, Contempt Order and rulings at status conferences earlier this year. Plaintiffs have to a degree been compensated by DOE for the loss caused by the non-compliance by being awarded their costs incurred in enforcing compliance with their discovery requests.[4]

---

4. I requested Plaintiffs to submit their requests for such fees, costs, and expenses, which they did on December 15, 1995. A settlement was reached concerning Plaintiffs request. On June

21, 1996, I approved Plaintiffs' and DOE's Stipulated Order re: Plaintiffs' Request of December 15, 1995, for Attorney Fees, Costs and Expenses

I have considered and rejected the possibility of directing DOE, as a contemnor, to exercise its right to control the litigation so that it may submit to an order imposing preclusive sanctions. Nor do I see fit to impose the sanction of default on Dow and Rockwell or the striking of defenses on certain liability issues for the contemptible actions of DOE, a non-party. Finally, although I am empowered to order the impoundment of documents by the United States Marshals, I conclude such impoundment would not serve a remedial purpose. Nor do I consider DOE's delay in production of the LANL documents warrants that Defendants be barred from contesting Plaintiffs' evidence regarding the health effects of exposure to plutonium and other radionuclides.

### III. *Dow's Motion for a Protective Order.*

On March 4, 1996, Dow filed a motion for a protective order supported by Dow's Memorandum in Opposition to Plaintiffs' Motion for Sanctions and In Support of Dow's Motion for Protective Order.[5] Dow requests I "abandon reliance upon the Stipulated Order's provision that any information that is in any way 'Rocky Flats-related' is subject to discovery." (Dow's Mot. Protective Order at 1.) It requests me "to initiate that process by requiring plaintiffs to demonstrate how the MUF documents that they have requested be reviewed for declassification are material to their claims, and by ordering that further discovery be limited to documents for which such a showing has been made." (*Id.* at 1–2.)

Dow notes at the time of entry of the Stipulated Order, Magistrate Judge Borchers acknowledged DOE "may have upwards of twenty-one million documents concerning Rocky Flats," (Mem.Op. & Order Sept. 12, 1994 at 2), and that "the breadth and scope of the documents is to be resolved at a later time," (*id.* at 3).

Dow argues a protective order should issue regarding the MUF documents because "none of the numerous scientific groups that have studied the plant have found information about MUF to be useful in assessing releases from the plant." (Dow's Mem. Opp'n Pls.' Mot. Sanctions & Supp. Dow's Mot. Protective Order at 16.)

On March 11, 1996, Plaintiffs' Response to Dow's "Motion for Protective Order" was filed. Plaintiffs argue Magistrate Judge Borchers rejected essentially the same relief sought by Dow in 1994 when he noted DOE, a non-party, was willing to make available large numbers of documents sought through a subpoena duces tecum for their production. (Mem.Op. & Order Sept. 12, 1994 at 3.) The magistrate judge stated: "The admissibility of documents provided will be resolved at a later date. Defendants have no standing to object to the breadth of the agreement. Appropriate objections as to relevance and admissibility may be made prior to trial." (*Id.*)

Plaintiffs assert Dow did not object to the ruling of the magistrate judge and is bound thereby. They further argue because DOE did not join in Dow's objections to the proposed Stipulated Order in 1994, and does not join in this motion for a protective order,[6] Dow should not be heard to assert DOE's interests via a motion for a protective order under Federal Rule of Civil Procedure 26(c).[7] Plaintiffs note under Local Rule 30.1B, the filing of a motion under Rule 26(c) "shall stay

---

whereby DOE agreed to pay Plaintiffs the sum of $500,000.00.

**5.** Dow states in moving for a protective order it accepts my "invitation" to do so, referring to my statement at the February 15, 1996 hearing:

> There is a stipulation, and the way the courts work is when the parties come forward with a stipulation, the court generally approves it, and that's what's happened here. If you think there are grounds to get relief from that stipulation, then the way to approach it is to file a motion with a brief and give the other side a chance to consider it and respond to that with

a brief. I will entertain that at any time because you are entitled to file it.

(Dow's Memo.Ex.F., Tr. Hearing Feb. 15, 1996 at 35.)

**6.** DOE's Motion for A Protective Order was filed on March 8, 1996, four days after that of Dow.

**7.** Rule 26(c) pertinently provides: "Upon motion by a party or by the person from whom discovery is sought ... the court ... may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense...." Fed. R.Civ.P. 26(c).

the discovery to which the motion is directed until further order of the court." D.C.Colo.LR 30.1B. They request summary denial or striking of Dow's motion or an order clarifying DOE's duties under the Stipulated Order and Contempt Order will not be stayed pending resolution of Dow's motion.

Dow's Reply in Support of its Motion for Protective Order was filed on March 25, 1996. Dow argues Plaintiffs' procedural objections to its motion are without merit because of my statement at the February 15, 1996 hearing that a motion for a protective order is the appropriate way for Dow to seek relief from Plaintiffs' discovery to the DOE and because "Dow has a clear interest in putting an end to the production of millions of pages of irrelevant material which Dow will nevertheless have to review." (Dow's Reply Supp.Mot. Protective Order at 2.) Dow states Plaintiffs' opposition to its motion does not attempt to demonstrate the discovery they seek, i.e., that the MUF documents are relevant in that they will resolve any factual issue in the case.

It cites the provision in Rule 26(c) that a motion for a protective order may be brought by a "party or by the person from whom discovery is sought" and the court's power to control the discovery process under Rule 26(b)(2).[8]

On April 19, 1996, I issued an Interim Order stating neither Dow's motion for a protective nor that of DOE filed on March 8, 1996, discussed below, would serve to stay discovery nor to relieve DOE of its obligations under the Stipulated Order pending further order.

### *Discussion of DOW's Motion for a Protective Order.*

DOW has standing to file this motion based on Rule 26(c) which permits "a party

or ... the person from whom discovery is sought" to file a motion for a protective order.

However, as mentioned below regarding DOE's motion for a protective order, DOW's motion is somewhat moot because DOE should by now be near completion of its review of the MUF documents. Briefly, however, I agree with Plaintiffs that Magistrate Judge Borchers, in entering his September 12, 1994 Memorandum Opinion and Order, considered and rejected the essence of the arguments now raised by Dow in its motion for a protective order when he ruled on Defendants' objections to the proposed Stipulated Order. The magistrate judge acknowledged that pursuant to the Stipulated Order a huge number of documents would be released by DOE but maintained Defendants had no standing to object to the breadth of the order but were restricted to appropriate objections as to relevance and admissibility before trial.

Dow's basis for its motion for protective order is that the MUF documents are not relevant. Plaintiffs dispute this. The parties disagree as to the significance of Plaintiffs' experts' comments in this regard. Considering DOE appears to be near completion of its review of the MUF documents, the issue of their relevance is one which DOW should raise in the context of their admissibility at trial.

### IV. *United States Department of Energy's Motion for a Protective Order.*

In this motion, filed on March 8, 1996, DOE seeks relief from paragraph 20 of the Stipulated Order in connection with Plaintiffs' request for all MUF and MUF-related documents. That paragraph sets forth the procedures DOE is to follow in reviewing

---

8. Rule 26(b)(2) states in pertinent part:

The frequency or extent of use of the discovery methods otherwise permitted under these rules and by any local rule shall be limited by the court if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues. The court may act on its own initiative after reasonable notice or pursuant to a motion [for a protective order] under subdivision (c).

documents requested by Plaintiffs containing classified information for possible declassification. In pertinent part, Paragraph 20 provides:

> Within seven days from the date that Class Plaintiffs designate a document or document collection for review, DOE shall make a request in writing to the appropriate organizations or entities charged with undertaking classification review ... requesting such organizations or entities to conduct a classification review on an expedited basis; and
>
> a. With respect to any document over which DOE has plenary authority to declassify that document, DOE shall complete classification review within thirty days after such document is requested by Class Plaintiffs, except for good cause shown and in which case parties will attempt to agree to a mutually acceptable resolution as to any documents so identified by DOE. Barring such resolution, the matter will be submitted to the Magistrate Judge for disposition....
>
> ....
>
> c. After such classification review is completed, DOE shall provide such documents to Class Plaintiffs or specify the grounds upon which such documents cannot be made available. DOE shall not withhold any document in its entirety where only a portion of the document contains classified material, but rather DOE shall make every effort to produce such documents in redacted form.

(Stip. Order re Produc.Docs.Pls.' Subpoenas at 12–13.)

DOE asserts because a substantial portion of the information in the MUF documents is subject to a statutory privilege, it should be relieved of its obligation to perform a declassification review of the documents. According to DOE, at the time it entered into the Stipulated Order, it did not anticipate Plaintiffs would submit a request for hundreds of thousands of pages of documents, a substantial portion of which would remain classified even after a declassification review. The agency asserts when it first received Plaintiffs' December 14, 1994 request for MUF documents, it believed the total page count was 11,000. After it realized, under a broad interpretation of Plaintiffs' request, the total pages were at least 677,000, DOE proposed a plan allowing Plaintiffs access to these documents, even though they contained highly sensitive information regarding nuclear weapons, and DOE continued its declassification review. (*See* DOE's Feb. 13, 1996 Status Report and Proposed Alternative Plans to Address Disc. Issues Pending.) DOE maintains, however, at the time of filing of this motion, it has gained a more complete understanding about the precise information in the MUF documents and believes a wholesale declassification is a futile exercise.

Through the motion for a protective order, DOE seeks relief from the provisions of paragraph 20 of the Stipulated Order and those parts of the Contempt Order relating to the declassification of the MUF documents. It notes under these orders and the rulings in status conferences earlier this year, DOE was required to review the MUF documents by March 15, 1996.

In its February 13, 1996 Status Report and Proposed Alternative Plans to Address Discovery Issues, DOE stated it could not complete a declassification review of the approximately 677,000 pages of MUF documents by March 15, 1996 and that if it were to review each page of the MUF documents, the task could not be completed before August 8, 1996.[9]

DOE asserts a majority of the information contained in the MUF documents is classified "restricted data" under the self-executing terms of the Atomic Energy Act, 42 U.S.C. § 2011, *et seq.*[10] It further states a signifi-

---

**9.** In fact the status report stated at the then current level of staffing, using current review procedures, DOE anticipated completion of the production process by October 7, 1996 and that through a modified quality assurance process, the completion date could be moved up to August 8, 1996.

**10.** The Atomic Energy Act defines "restricted data" as "all data concerning (1) design, manufacture, or utilization of atomic weapons; (2) the production of special nuclear material; or (3) the use of special nuclear material in the production of energy ..." 42 U.S.C. § 2014(y).

cant amount of the restricted data contained in the MUF documents cannot be declassified under either the statute or DOE's implementing guidelines because the disclosure of such information reasonably may be expected to harm the national security by, *inter alia,* imparting proven nuclear weapon design information to would-be proliferators. Sanitization of the MUF documents to the point where nothing of substance can be disclosed is necessitated by Congress' mandate in the Atomic Energy Act to protect restricted data.

Accordingly, DOE argues Plaintiffs may not be able to use a significant amount of information in the MUF documents for any purpose in this case. Therefore, DOE does not believe any interest ultimately will be served by a declassification review of the voluminous MUF documents.

DOE maintains its sampling of fifteen categories of the classified MUF documents, described in detail in the motion, demonstrates that at the end of the declassification review, Plaintiffs would end up with little more information than that currently available to them.

Plaintiffs' Opposition to United States Department of Energy's Motion for a Protective Order was filed on May 21, 1996. Plaintiffs point out that, in opposing their motion for contempt, DOE raised similar arguments to those it does now, namely that the review of documents for declassification would be unduly time consuming, expensive and futile because the MUF documents would be sanitized to the point that only information about yearly inventory differences would remain.

Plaintiffs cite the Contempt Order, rejecting these arguments and noting "any alleged impossibility or impracticability existed at the time DOE voluntarily entered the [Stipulated] Order." *Cook v. Rockwell Int'l Corp.,* 907 F.Supp. at 1464. In Plaintiffs' view, the only change is that after increasing its esti-mate of the volume of responsive documents by several hundred thousand pages, DOE has now spent enormous sums initiating a declassification review. Plaintiffs maintain this so-called "review" does not represent a good faith effort to conduct a declassification analysis.

. They agree there is no point in DOE spending its resources on a review that produces documents so heavily redacted as to be of marginal utility. For this reason, on May 10, 1996, Plaintiffs asked DOE, pending further notice of ruling, to suspend the review for fourteen of the fifteen categories of MUF documents described in DOE's motion. According to Plaintiffs, the fourteen categories consist of voluminous periodic reports and computer runs representing raw data, and have generally emerged from the DOE review with little useful information intact.[11]

Plaintiffs note, under Rule 26(c), DOE has the burden of showing good cause why a protective order should issue. They criticize DOE's exclusive reliance on two affidavits executed by Bryan Siebert, the director of DOE's Office for Declassification, in support of its contention that producing the MUF documents would be futile because DOE must remove virtually all the information contained in the documents. Plaintiffs further criticize the seventy-four document sampling of the 677,000 pages of MUF documents on which Siebert's affidavit rests.[12]

Plaintiffs state they asked DOE to allow them to inspect the classification guides which Siebert testified in his deposition contain the criteria being applied by DOE's reviewers. The purpose of such inspection, Plaintiffs assert, is to shed light on whether they reflect the same national security concerns as those expressed in Siebert's affidavits and whether they mandate the redaction of data being deleted from the MUF documents. DOE however refused to allow counsel for Plaintiffs who have security clearances to inspect the classification guides on

---

**11.** DOE apparently has not suspended any part of its review.

**12.** In a further declaration attached to DOE's reply, Siebert states he misstated the size of the sample in his deposition. He declares the 74 sampled documents themselves consist of ap-proximately 42,000 pages which were taken from a significantly larger number of pages that had been reviewed up until that time. He states, at his deposition, he confused the number of pages in the sample with the total number of pages that had been reviewed.

the grounds that the Atomic Energy Act charges DOE with the controlling, dissemination and declassification of restricted data, an exclusively executive function, not subject to challenge. Therefore, DOE refused to allow Plaintiffs' counsel access to the guides because they could not articulate a "need to know" the contents of the guides.

They challenge Doe's defense of its redactions on the basis that much of the information in the MUF documents constitutes "restricted data" as defined under the Atomic Energy Act. Plaintiffs maintain the mere fact the information may originate as "restricted data" does not prevent its declassification. They cite § 2162 of the Atomic Energy Act which confers on the DOE the authority to declassify data and remove it from the category of "restricted data."

Plaintiffs make three proposals on the issue of how to maximize their useful access to the MUF documents in the time remaining. First, they submit DOE's motion should be denied. Second, Plaintiffs suggest their cleared counsel, experts and consultants be given free access to the MUF and other documents at the plant, at DOE's expense, including the cost of travel, lodging, and the relevant experts' and consultants' time and that such access to classified material be without concern that their notes or mental impressions will be transmitted to Defendants, i.e. that I should direct any DOE contractor or personnel who may acquire access to such information in the course of assisting Plaintiffs to "keep it to themselves." (Pls.' Opp'n United States DOE's Mot. Protective Order at 22.) Third, they request me to direct DOE to "devote its compliance resources to a serious effort at meeting plaintiffs' other outstanding requests." (Id.)

In its reply, filed on June 7, 1996, DOE maintains Plaintiffs' allegation that it has undertaken its review for sanitization and production of the MUF documents in "bad faith" is nothing but a bare assertion, unsupported by any evidence. DOE asserts Rocky Flats plant made pits of nuclear weapons, being the source of all nuclear energy either released in a single stage weapon or driving the secondary in a thermonuclear weapon. It states the MUF documents contain infor-

mation relating to the design, components, function, and military utilization of the pits manufactured at Rocky Flats. Therefore, DOE maintains, it was entirely foreseeable that it would be forced to redact substantial portions of the classified information they contain.

DOE argues Siebert's affidavits, sworn statements of an agency official attesting to the sensitivity of material that may not be produced without creating a reasonable danger of harm to the national interest, are sufficient to establish the privileged nature of the information in question. It cites *Ellsberg v. Mitchell*, where the court held "when assessing claims of a state secrets privilege, a trial judge properly may rely on affidavits and other secondary sources more often than he might when evaluating assertions of other evidentiary privileges." 709 F.2d 51, 58 (D.C.Cir.1983), (footnote omitted), *cert. denied*, 465 U.S. 1038, 104 S.Ct. 1316, 79 L.Ed.2d 712 (1984).

Further, DOE asserts the agency official need not personally review each of the documents in question but may rely on a sample of those documents, as did Siebert. In this regard, DOE cites *Northrop Corp. v. McDonnell Douglas Corp.*, where the court stated "[a] sampling procedure appears to us to be a sound alternative to the illogical alternative of requiring [the agency] to conduct a full search of its files" where the agency claimed a search would be burdensome and fruitless because of the state secrets privilege. 751 F.2d 395, 405 (D.C.Cir. 1984).

For these reasons, DOE contends the Siebert affidavits sufficiently establish its good faith and an additional *in camera* review is unnecessary. DOE would be willing, however, to provide classified materials or an explanation in an *in camera, ex parte* proceeding should I have doubts about the legitimacy of DOE's sanitization review.

While DOE acknowledges the sanitization process at Rocky Flats is not perfect and some declassification errors occur, particularly in light of the vast quantity of MUF documents, such mistakes do not suggest

DOE has reviewed the MUF documents in bad faith.

As concerns Plaintiffs' demand for access to DOE's classification guides to test DOE's good faith in conducting the sanitization process, DOE argues Plaintiffs have no right to "second-guess" the accuracy or correctness of its declassification decisions. DOE cites *Halperin v. CIA,* 629 F.2d 144, 148 (D.C.Cir. 1980) in this regard. There, the court held summary judgment may be granted on the basis of agency affidavits if they contain

> reasonable specificity of detail rather than merely conclusory statements, and if they are not called into question by contradictory evidence in the record or by evidence of agency bad faith in the absence of evidence of an agency's bad faith.

> If the agency's statements meet this standard, the court is not to conduct a detailed inquiry to decide whether it agrees with the agency's opinions; to do so would violate the principle of affording substantial weight to the expert opinion of the agency. Judges, moreover, lack the expertise necessary to second-guess such agency opinions in the typical national security [Freedom of Information Act] case.

*Id.*

DOE states, nevertheless, reserving its right to object to the use of the guides by Plaintiffs, and, subject to an appropriate protective order, it is willing to provide Plaintiffs' cleared counsel access to those classification guides that are unclassified and that have been used in the review of the MUF documents, as well as a sanitized version of those classified guides which contain readily segregable declassified information. Such access would be at Rocky Flats.

DOE iterates if I were to conclude its affidavits do not establish its good faith, the appropriate procedure is *ex parte, in camera* review. It maintains Plaintiffs' counsel, even those who have security clearances, have no right to participate. It cites *Ellsberg,* 709 F.2d at 61, concerning a state secrets privilege claim, where the appeals court held it to be well settled that a trial judge assessing the legitimacy of such claim should not permit the requesters' counsel to participate in an *in camera* investigation of putatively privileged material.

DOE reasserts its motion for a protective order validly relies on the Atomic Energy Act's absolute privilege not to disclose nuclear secrets.

Plaintiffs filed a surreply on July 5, 1996, for the stated purpose of addressing DOE's proposal in its reply of an *ex parte, in camera* review of its declassification guides and its contention that an agency may invoke national security to withhold documents that the agency has merely sampled. They maintain the *Northrop* and *Ellsberg* cases cited by DOE are distinguishable as involving the state secrets privilege and not standing for the position that an agency may claim a privilege based on its review of only a sample of the documents in controversy.

### Discussion of DOE's Motion for a Protective Order.

My January 16, 1996 order required DOE to prepare a plan to ensure the declassification of the 11,000 MUF documents by March 15, 1996, or, in the alternative, to explain why such declassification could not be completed by that date. DOE stated in its February 15, 1996 status report that if it were to review each page of the MUF documents under a modified quality assurance process, the task could not be completed before August 8, 1996. DOE has apparently been reviewing MUF documents since that date. Presumably, therefore, at this time, it is nearing completion of the review of MUF documents and the motion for a protective order is somewhat moot.

■ Plaintiffs have suggested to DOE that it abandon its review of the MUF documents in fourteen categories identified by DOE because of the futility of the nature of the documents released after sanitization. DOE has continued to conduct the review of these categories, presumably because it is required to do so pursuant to the Stipulated Order and the Contempt Order. Accordingly, I order DOE relieved of its duty to conduct a classification review of those documents which Plaintiffs have suggested they cease reviewing.

■ I grant DOE's motion for a protective order insofar as it seeks relief from the March 15, 1996 deadline for review of MUF documents and order DOE to submit a status report regarding the production of documents responsive to Plaintiffs' requests, including that for MUF-related documents, and the anticipated completion thereof. Once received, I will be in a position to set a realistic new date by which DOE should have completed the declassification of the MUF documents not included in the fourteen categories of documents concerning which Plaintiff has requested DOE to cease its classification review.

■ Other than relieving DOE of its March 15, 1996 deadline and of the duty to review those documents in the fourteen categories, I deny DOE's motion. It has not shown good cause why it should be wholly relieved of its stipulated duty to undertake a classification review of the MUF documents and, even if they contain classified material to "make every effort to produce such documents in redacted form." (Stipulated Order at 12–13.)

Moreover, I noted in the Contempt Order that "any alleged impossibility or impracticability existed at the time DOE voluntarily entered into the [Stipulated] Order...." *Cook,* 907 F.Supp. at 1464.

While I sympathize with Plaintiffs' position that the secrecy surrounding the declassification process leaves the process open to abuse, they have not produced any evidence of bad faith concerning the manner in which DOE has conducted the declassification process to warrant an investigation into that process at this time. For this reason, I make no order regarding Plaintiffs' demand for the classification guides, other than that Plaintiffs and DOE should consider an appropriate protective order regarding the classification guides.

Similarly, I make no order regarding Plaintiffs' other requests, including that for free access to the MUF and other documents at the plant at DOE's expense.

V. *Plaintiffs' Motion that the United States Department of Energy be held in Contempt re: Document Requests dated June 23 and August 24, 1995.*

On April 5, 1996, Plaintiffs filed this further motion requesting that DOE be held in contempt regarding Plaintiffs' June 23, 1995 and August 28, 1995 document requests. Plaintiffs state during the pendency of this litigation DOE has made several highly publicized announcements about "missing" and "unaccounted for" plutonium at Rocky Flats and other weapons facilities. In particular, they refer to DOE's public disclosures in December 1993, June 1994 and February 1996. For each of the disclosures, DOE prepared written materials for distribution to the media. Plaintiffs assert the disclosures have resulted from internal DOE studies concerning the types of MUF information the agency wishes to reveal.

In document requests dated June 23, 1995 and August 28, 1995, Plaintiffs requested DOE to produce all documents relating to studies it has conducted of the declassification of MUF information at Rocky Flats. In the June 23, 1996 request, Plaintiffs stated:

It appears that DOE and/or its contractors studied the declassification of MUF documents and information at Rocky Flats during at least two periods. First in relation to the *Church* litigation in the 1970's; and second, in connection with DOE's release of gross MUF numbers in 1994. We request that DOE produce all documents (regardless of the document's date or location) on this topic, *i.e.* the possible declassification of MUF information pertaining to Rocky Flats and the consideration of legal and/or political factors.

(Mem.Supp.Pls.'Mot. DOE be held in Contempt re: Doc.Reqs. June 23 & Aug. 28, 1995, Ex.A.)

On August 28, 1995, Plaintiffs sent a follow-up request to DOE, noting it had not complied with the June 23, 1995 request within the thirty-day deadline under the Stipulated Order. In that letter, Plaintiffs stated:

[W]e request once again that DOE produce all analyses, studies, reports and other documents relating to the declassifica-

tion of MUF information at Rocky Flats. This request encompasses, but is not limited to, the two studies which DOE apparently conducted in or around 1977 and 1994.

(*Id.* at 3.)

Plaintiffs state DOE has produced some documents in response to these requests but that nearly all of those produced date from the 1970's and 1980's. Conspicuously missing, they assert, are documents relating to DOE's 1993, 1994 and 1996 disclosures or documents relating to its "Fundamental Review" of its classification policies launched in March 1995 encompassing MUF information.[13] (*See id.*, Ex. D.)

In opposition to this motion, DOE maintains Plaintiffs are attempting to recharacterize their claim which resulted in the Contempt Order, that DOE has violated the Stipulated Order by failing to produce MUF documents. DOE asserts that order encompasses the June 23 and August 28, 1995 requests which are subsumed by Plaintiffs' December 14, 1994 request for all MUF-related documents.

DOE states, since appointing Lindsay to be responsible for its discovery compliance, it has produced a significant amount of material in response to Plaintiffs' discovery requests, including that for MUF-related documents and documents relating to the declassification of MUF information pertaining to Rocky Flats. DOE states the search for responsive documents continues. In an affidavit of Lindsay attached to DOE's opposition, she outlines DOE's efforts to respond and states additional documents were produced to Plaintiffs on March 8, April 11, 15, and 24, 1996.

DOE urges me to deny Plaintiffs' new motion for contempt because it has already been adjudicated and because DOE is in the process of substantially complying with Plaintiffs' discovery requests and moving toward total compliance with the MUF-related document request.

In reply, Plaintiffs assert DOE has reversed its stance, noting its earlier objection to Plaintiffs' Request for Attorneys [sic] Fees, Costs, and Expenses regarding the request for fees related to the August 28, 1995 letter request because it represented a new document request not subject to the Contempt Order. Plaintiffs state, since DOE concedes the June and August 1995 requests seeking documents about its classification policies and decisions regarding MUF are encompassed by the Contempt Order, I should proceed directly to evidentiary sanctions tailored to the subject matter of these requests. According to Plaintiffs, the requests were aimed at eliciting additional evidence that DOE has abused its classification powers to shield itself and its indemnitees, the Defendants, from legal liability, and evidence that DOE refuses to disclose MUF information that poses no national security risk.

Plaintiffs maintain DOE concedes it has not produced all documents responsive to the June and August 1995 requests to date, let alone by the March 15, 1996 deadline. They request me to impose compensatory evidentiary sanctions based on the inference that the documents, if produced, would prove that DOE has abused its classification authority to serve its litigation interests.

In particular, Plaintiffs state DOE has mostly failed to produce documents relating to its "openness" disclosures and refuses to produce documents relating to its "fundamental" classification review, which it states, are subject to a "deliberative process privilege."

Plaintiffs attach to their motion a copy of a document entitled "Draft Report for Public Comment—February 1, 1996—Fundamental Classification Policy Review." (Pls.' Mot. DOE be held in contempt re Doc.Regs. June 23 & Aug. 28, 1995, Ex.D.) The Draft Report was released at a February 6, 1996 press conference of the Secretary of Energy. It reflects the Secretary commissioned the president of Sandia National Laboratories to appoint a group comprised primarily of non-

---

**13.** Plaintiffs' motion was filed on April 5, 1996, DOE's opposition on April 25, 1996, and Plaintiffs' reply brief on May 7, 1996. It is possible that DOE has since the completion of briefing produced further responsive documents.

federal technical and policy experts to undertake a fundamental review of department-wide classification policies and procedures.

DOE states the Draft Report, released solely for the purpose of soliciting public comment on the recommendations of the review group, has not been acted upon by DOE and will not be until other federal agencies have had an opportunity to review the report and recommendations as well as to provide comments to the Secretary of Energy. It asserts, at this point, both the proceedings of the group leading to the draft report and the materials and documents generated in that process are subject to the deliberative process privilege and a significant portion of the documents contain classified information.

▮ "The deliberative process privilege 'shields from public disclosure confidential inter-agency memoranda on matters of law or policy.'" *Texaco Puerto Rico v. Department of Consumer Affairs*, 60 F.3d 867, 884 (1st Cir.1995) (quoting *National Wildlife Fed'n v. United States Forest Serv.*, 861 F.2d 1114, 1116 (9th Cir.1988)). "The privilege rests on a policy affording reasonable security to the decision-making process within a government agency." *Id.*

Plaintiffs argue DOE's deliberative process objection is untimely and it has never moved for a protective order on that ground. Moreover Plaintiffs cite authority that the deliberative process privilege "'must be formally asserted and delineated in order to be raised properly.'" *Friedman v. Bache Halsey Stuart Shields, Inc.*, 738 F.2d 1336, 1342 (D.C.Cir.1984) (quoting *Kerr v. United States District Court*, 511 F.2d 192, 198 (9th Cir. 1975), *aff'd*, 426 U.S. 394, 96 S.Ct. 2119, 48 L.Ed.2d 725 (1976)). Plaintiffs state DOE has not identified a single document to which the privilege applies and has not shown the documents reflect predecisional agency deliberations. They assert the privilege is within the court's discretion and may be overridden by plaintiffs' need for the documents. They point out it is routinely denied "where the documents may shed light on alleged government malfeasance." *Id.* (citations omitted).

Plaintiffs maintain the draft report supports the idea that DOE has engaged in overclassification and that this subject is plainly relevant to this litigation and that Plaintiffs have a need for these documents. They note DOE does not contend the documents specifically responsive to the June 23 and August 28 requests are voluminous. They further note DOE's pending motion for a protective order does not apply to these requests because the "sampling" of documents which DOE performed does not include the type of documents responsive to these requests.

Plaintiffs seek, as a compensatory evidentiary sanction, that I deem it established that DOE has wrongfully abused its classification power to withhold probative MUF evidence relating to Rocky Flats to shield itself and its indemnitees, the Defendants, from legal liability.

*Discussion of Plaintiffs' Motion that DOE be Held in Contempt re: Document Requests dated June 23 and August 28, 1995.*

DOE asserts in its response to this motion that the June 23 and August 28, 1995 requests are encompassed by the Contempt Order relating to the failure of DOE to comply with Plaintiffs' December 14, 1995 request for MUF-related documents. Plaintiffs do not contest this in their reply and amend their request to one for evidentiary sanctions similar to those sought in their supplemental motion for sanctions discussed above.

Plaintiffs concede DOE has to a very limited extent complied with the June 23 and August 28, 1995 requests. With regard to Plaintiffs' requests for the documents relating to the draft report concerning the fundamental classification policy review, since DOE has not adopted the draft report, it seems premature and somewhat of a fishing expedition for Plaintiffs to seek to compel the release of documents relating to the draft report in the hope that they will shed light on whether DOE has engaged in overclassification regarding the MUF-related documents.

For the reasons stated in relation to the supplemental motion for sanctions, I do not consider further sanctions are warranted

pursuant to the Contempt Order. However, I order Plaintiffs and DOE each to submit a status report within twenty days regarding the production of documents responsive to Plaintiffs' requests, including that for MUF-related documents, since, according to DOE, the search for and production of responsive documents has been ongoing.

### VI. *Orders.*

For the aforesaid reasons,

IT IS ORDERED THAT Plaintiffs' Supplemental Motion for Sanctions against the United States Department of Energy is DENIED;

IT IS FURTHER ORDERED THAT Dow's Motion for a Protective Order is DENIED;

IT IS FURTHER ORDERED THAT the United States Department of Energy's Motion for a Protective Order is GRANTED insofar as it seeks relief from the March 15, 1996 deadline for review of "materials unaccounted for" ("MUF-related") documents;

IT IS FURTHER ORDERED THAT the United States Department of Energy is relieved of its duty to conduct a declassification review of documents responsive to Plaintiffs' December 1994 "materials unaccounted for" ("MUF-related") documents request falling in the categories enumerated in Plaintiffs' counsel's letter of May 10, 1996 addressed to Henry L. Solano, Esq. and Dana C. Lindsay, Esq.;

IT IS FURTHER ORDERED THAT Plaintiffs and the United States Department of Energy are each to file a status report within twenty days of the date of this order regarding the production of documents responsive to Plaintiffs' requests, including that for MUF-related documents, and the anticipated completion date thereof;

IT IS FURTHER ORDERED THAT the United States Department of Energy's Motion for a Protective Order is DENIED in all other respects;

IT IS FURTHER ORDERED THAT Plaintiffs' Motion that the United States Department of Energy be held in Contempt re:

Document Requests dated June 23 and August 24, 1995 is DENIED.