**NATIONAL WILDLIFE FEDERATION,**
Plaintiff–Appellant,

v.

**UNITED STATES FOREST SERVICE,**
Defendant–Appellee.

No. 87–3552.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Sept. 10, 1987.

Vacated and Remanded Jan. 5, 1988.

Resubmitted Oct. 7, 1988.

Decided Nov. 14, 1988.

Michael Axline, Western Natural Resources Law Clinic, Eugene, Or., for plaintiff-appellant.

Judith D. Kobbervig, Asst. U.S. Atty., Dist. of Or., Portland, Or., for defendant-appellee.

Before WRIGHT, WALLACE and PREGERSON, Circuit Judges.

WALLACE, Circuit Judge:

The National Wildlife Federation (National Wildlife) appeals from the district court's entry of summary judgment in favor of the United States Forest Service (Forest Service) on National Wildlife's request for disclosure of documents pursuant to the Freedom of Information Act (FOIA), 5 U.S.C. § 552. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

## I

National Wildlife sought copies of certain internal documents from the Forest Service, pursuant to the FOIA: (1) working drafts of the Wallowa–Whitman National Forest Plan (Forest Plan), (2) working drafts of an environmental impact statement (draft EISs) relating to the Forest Plan, and (3) "previews" of the drafts, which are comments, criticisms, and recommendations made by the Land Management Planning Office in Washington, D.C. (Washington Office). Asserting that all of these documents were "predecisional," the Forest Service refused to release any of them under exemption (b)(5) of FOIA, 5 U.S.C. § 552(b)(5) (exemption 5). National Wildlife pursued its requests through available administrative channels, but was unable to procure any of the withheld documents.

National Wildlife then filed a complaint in United States District Court. Thereafter, the Forest Service voluntarily released portions of these documents. Upon cross-motions for summary judgment, the case was presented to a magistrate. Pursuant to a stipulation by both parties, the magistrate, who had decided the identical issue in a different case then pending before this court, entered an order denying National Wildlife's request for the documents. This order was then appealed to this court, at which time it was consolidated with the pending case, *Cascade Holistic Economic Consultants v. United States Forest Service.* Nos. 84–4095 and 84–4292. In an unpublished disposition, we reversed and remanded both cases to the district court with orders to make specific findings on whether any portions of these doc-

uments could be released consistent with the exemptions of the FOIA. 767 F.2d 931 and 767 F.2d 933.

On remand, the magistrate reviewed the documents and issued findings and recommendations exempting some portions from disclosure but ordering release of others. Following objections by National Wildlife, the district court conducted a review of the documents and ordered release of some additional factual material. In addition, the district court ordered the Forest Service to review the remaining withheld portions and release other factual material that could be segregated from deliberative material. The Forest Service did so, whereupon the district court conducted another review of the documents, this time concluding there were no other factual materials that were reasonably segregable from deliberative materials. National Wildlife timely appealed.

Because the disputed Forest Service documents had not been properly sealed and certified for appeal, we lacked an adequate record on which to base a decision. Therefore, we vacated submission and remanded to the district court to identify specifically the documents reviewed *in camera* and the portions that were not released, and to seal and certify the documents for our review. After compliance by the district court, we resubmitted this appeal for decision.

## II

In reviewing a district court's judgment under the FOIA, we "must determine whether the district judge had an adequate factual basis for his or her decision" and, if so, we "must determine whether the decision below was clearly erroneous." *Church of Scientology v. United States Department of the Army*, 611 F.2d 738, 742 (9th Cir.1979) (*Scientology*).

█ Because the district judge properly inspected the documents involved in this case *in camera,* the parties do not, and reasonably could not, dispute that the first prong of the test is satisfied. *See id.* at 743 (concluding that where a trial court properly reviewed contested documents *in camera,* an adequate factual basis for the

decision exists). Hence, our inquiry in this case is limited to reviewing the district court's judgment for clear error. *See id.* Under this standard, we will reverse only if we are left with a definite and firm conviction that the district court has erred. *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 541, 92 L.Ed. 746 (1948); *Johnson v. United States Postal Service*, 756 F.2d 1461, 1464 (9th Cir.1985).

### A.

The FOIA mandates that agencies make available for public inspection a broad range of information, including the agency's organization, general methodology, rules of procedure, substantive rules, final opinions, and statements of policy and interpretation that have been adopted by the agency. 5 U.S.C. § 552(a). The FOIA, however, specifically exempts nine categories of documents from its otherwise broad disclosure requirement. 5 U.S.C. § 552(b). Unless documents fall within one of the nine specific exemptions to the disclosure requirement of the FOIA, they are presumed to be available for public inspection. *See* 5 U.S.C. § 552(c) ("This section does not authorize withholding of information or limit the availability of records to the public, *except as specifically stated in this section.*") (emphasis added). Moreover, "[t]he burden of proof is on the agency to show that the documents are exempt from its duty to disclose." *Willamette Industries v. United States*, 689 F.2d 865, 868 (9th Cir.1982).

As the basis for its decision to withhold the disputed documents, the Forest Service relies on exemption 5, which exempts "inter-agency or intra-agency memorandums [sic] or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). Pursuant to this exemption, the Forest Service invokes the "deliberative process" privilege, which shields from public disclosure confidential inter-agency memoranda on matters of law or policy. *See Wolfe v. Department of Health and*

*Human Services,* 839 F.2d 768, 773 (D.C. Cir.1988) (en banc) (*Wolfe*). The decisive issue in this case is thus whether the remaining withheld portions of the draft Forest Plans, draft EISs, and "previews" can be considered part of the Forest Service's "deliberative process," thereby triggering exemption 5.

### B.

██ To qualify for exemption 5 under the "deliberative process" privilege, a document must be *both* (1) "predecisional" or "antecedent to the adoption of agency policy" and (2) "deliberative," meaning "it must actually be related to the process by which policies are formulated." *Jordan v. United States Department of Justice,* 591 F.2d 753, 774 (D.C. Cir.1978) (*Jordan*). These twin requirements recognize that the underlying purpose of this privilege is to "protect[ ] the consultative functions of government by maintaining the confidentiality of advisory opinions, recommendations, and deliberations comprising part of a process by which governmental decisions and policies are formulated." *Id.* at 772.

By maintaining the confidentiality of the give-and-take that occurs among agency members in the formulation of policy, the deliberative process privilege under exemption 5 encourages frank and open discussions of ideas, and, hence, improves the decisionmaking process. *See United States v. Weber Aircraft Corp.,* 465 U.S. 792, 802–03, 104 S.Ct. 1488, 1494, 79 L.Ed. 2d 814 (1984). "[I]t would be impossible to have any frank discussions of legal or policy matters in writing if all such writings were to be subjected to public scrutiny." *Environmental Protection Agency v. Mink,* 410 U.S. 73, 87, 93 S.Ct. 827, 836, 35 L.Ed.2d 119 (1972) (*Mink*) (citing S. Rep. No. 813, 89th Cong., 1st Sess. 9 (1965)). As we stated in *Julian v. United States Department of Justice,* 806 F.2d 1411 (9th Cir.1986), *aff'd,* — U.S. ——, 108 S.Ct. 1606, 100 L.Ed.2d 1 (1988), "Exemption 5 was created to prevent the disruption of a free flow of ideas, opinions, advice and frank discussions within agencies concerning their policies and programs. In fur-

therance of this objective the courts have allowed the government to withhold memoranda containing advice, opinions, recommendations and subjective analysis." *Id.* at 1419 (citation omitted). Given the underlying purpose of this privilege, it is no surprise that "[f]actual material that does not reveal the deliberative process is not protected by this exemption." *Paisley v. CIA,* 712 F.2d 686, 698 (D.C. Cir.1983).

### C.

██ National Wildlife contends, however, that "to qualify under exemption 5, the documents must not only be predecisional and deliberative, but [must] also contain non-binding and advisory recommendations regarding law or policy: opinions or recommendations regarding facts or consequences of facts [are] not ... exempt." The magistrate, whose interpretation of the law was adopted by the district court, declined to impose this third requirement on exemption 5. Because the question of what requirements apply to a disclosure exemption under the FOIA is a question of law, we review this issue de novo. *See, e.g., Scientology,* 611 F.2d at 743–44.

The magistrate rejected National Wildlife's suggested additional test for two reasons. First, he observed that National Wildlife had cited no cases imposing this third requirement on exemption 5. Second, he stated that, in effect, National Wildlife's "argument would require disclosure of the deliberative processes regarding facts, which *Ryan* [v. *Department of Justice,* 617 F.2d 781 (D.C. Cir.1980) (*Ryan*),] does not allow." Although National Wildlife disputes the first reason, we believe the magistrate was correct. The merits, however, are properly focused in the magistrate's second reason.

National Wildlife challenges the magistrate's reading of *Ryan.* It argues that *Ryan* allows factual matters to be withheld only when their disclosure would reveal the substance of predecisional *policy* discussions. Under National Wildlife's formulation of the requirements for the "deliberative process" privilege, documents can fall into one of three possible categories: factu-

al; deliberative, but not containing "non-binding recommendations regarding law or policy"; and deliberative and containing such non-binding recommendations on law or policy. Only documents in the third category would qualify for the privilege. National Wildlife, however, points to no case explicitly articulating such a tripartite categorization of agency documents. The Supreme Court has recognized a distinction only between "materials reflecting *deliberative* or policy-making processes on the one hand, and *purely factual*, investigative matters on the other." *See Mink*, 410 U.S. at 89, 93 S.Ct. at 836 (emphasis added). Whereas "materials reflecting deliberative or policy-making processes" fall within exemption 5, "memoranda consisting *only* of compiled factual material or *purely* factual material contained in deliberative memoranda and severable from its context would generally be available" for inspection by the public. *Id.* at 87–89, 93 S.Ct. at 836 (emphasis added); *see also Local 3, IBEW, AFL–CIO v. NLRB*, 845 F.2d 1177, 1180 (2d Cir.1988) ("Purely factual material not reflecting the agency's deliberative process is not protected."). The Court, moreover, pointed out that Congress had rejected an early version of exemption 5 that would have required disclosure of "[a]ll *factual* material on Government records," *Mink*, 410 U.S. at 90, 93 S.Ct. at 837, *quoting* S. Rep. No. 1219, 88th Cong., 2d Sess. 7 (1964) (emphasis in original). Hence, contrary to National Wildlife's suggestion, "opinions or recommendations regarding facts or consequences of facts" are not automatically ineligible for exemption from disclosure under exemption 5.

In addition, National Wildlife has cited no case and we have found no case that supports an explicit requirement that a document contain advisory recommendations must relate to deliberations of "law and policy." We have found a statement that suggests that a document must relate to "law or policy" to be "deliberative" in the first place. In *Vaughn v. Rosen*, 523 F.2d 1136, 1144 (D.C. Cir.1975), the District of Columbia Circuit suggested in dictum that to satisfy the exemption 5 "deliberative" requirement, a

document must be a direct part of the deliberative process in that it makes recommendations or expresses opinions on legal or policy matters. Put another way ... [it] must ... be a part of the agency give-and-take—of the deliberative process—by which the decision itself is made.

We do not, however, read such a statement as suggesting that a document, or any portion thereof, must itself contain recommendations on law or policy to qualify as "deliberative." Therefore, we reject National Wildlife's suggested tripartite analysis; we will not distinguish between deliberative documents which do and do not contain "non-binding recommendations regarding law or policy."

## D.

■ When a court must decide whether exemption 5 applies in a complicated case, we believe a better analytical tool than merely determining whether the material itself was essentially deliberative or factual should be used: we should focus on whether the document in question is a part of the *deliberative process*. The District of Columbia Circuit has emphasized that exemption 5 "was intended to protect not simply deliberative *material*, but also the deliberative *process* of agencies." *Montrose Chemical Corp. of California v. Train*, 491 F.2d 63, 71 (D.C. Cir.1974) (*Montrose Chemical*) (emphasis added). Hence, even if the content of a document is factual, if disclosure of the document would expose "the decision-making process itself" to public scrutiny by revealing the agency's "evaluation and analysis of the multitudinous facts," the document would nonetheless be exempt from disclosure. *Id.* at 68. In other words, the document is considered to be part of the "deliberative process" as long as it is "actually ... related to the *process* by which policies are formulated." *Jordan*, 591 F.2d at 774 (emphasis added). Accordingly, the deliberative process privilege has been held to cover all "recommendations, draft documents, proposals, suggestions and other subjective documents which reflect the personal opin-

ions of the writer rather than the policy of the agency," as well as documents which would "inaccurately reflect or prematurely disclose the views of the agency." *Coastal States Gas Corp. v. Department of Energy*, 617 F.2d 854, 866 (D.C. Cir.1980).

Thus, the District of Columbia Circuit has repeatedly interpreted exemption 5 to protect documents that would reveal the *process* by which agency officials make these determinations, whether or not the documents themselves contain facts on non-binding recommendations regarding law and policy. In *Russell v. Department of the Air Force*, 682 F.2d 1045, 1048 (D.C. Cir.1982) (*Russell*), for instance, the court recognized that exemption 5 covers "not only communications which are themselves deliberate in nature, but also all communications which, if revealed, would expose to public view the deliberative process of an agency,"; and, therefore, applies if, "disclosure of even purely factual material would reveal an agency's decision-making process." *Accord Mead Data Central, Inc. v. United States Department of the Air Force*, 566 F.2d 242, 256 (D.C. Cir. 1977). Under such a "process-oriented" inquiry, "a report does not become part of the deliberative process simply because it contains only those facts which the person making the report thinks material." *Playboy Enterprises, Inc. v. Department of Justice*, 677 F.2d 931, 935 (D.C. Cir.1982). Where either the disclosure of the manner of selecting or presenting facts would expose the deliberative process, or where facts are "inextricably intertwined" with "policy-making processes," the material is exempt. *Ryan*, 617 F.2d at 790; *Lead Industries Association, Inc. v. OSHA*, 610 F.2d 70, 83 (2d Cir.1979) (*Lead Industries*); *Soucie v. David*, 448 F.2d 1067, 1078 (D.C. Cir.1971).

Our reading of the foregoing cases informs us that the scope of the deliberative process privilege should not turn on whether we label the contents of a document "factual" as opposed to "deliberative." *See Montrose Chemical*, 491 F.2d at 67–68. A legal standard that ties our judgment solely to the type of information allegedly secreted in a document transforms our inquiry into a semantics debate that ignores that the ultimate objective of exemption 5 is to safeguard the deliberative *process* of agencies, not the paperwork generated in the course of that process. *See Dudman Communications Corp. v. Department of the Air Force*, 815 F.2d 1565, 1568 (9th Cir.1987) (*Dudman Communications*). Documents need not themselves be "deliberative," in the sense that they make non-binding recommendations on law or policy, in order to qualify for the deliberative process privilege. "In some circumstances, even material that could be characterized as 'factual' would so expose the deliberative process that it must be covered by the [deliberative process] privilege." *Wolfe*, 839 F.2d at 774.

Under this "process-oriented" or "functional" test that we adopt, documents containing nonbinding recommendations on law or policy would continue to remain exempt from disclosure. Factual materials, however, would likewise be exempt from disclosure to the extent that they reveal the mental processes of decisionmakers. *See Dudman Communications*, 815 F.2d at 1568; *Lead Industries*, 610 F.2d at 85–86; *Montrose Chemical*, 491 F.2d at 67–68. In other words, whenever the unveiling of factual materials would be tantamount to the "publication of the evaluation and analysis of the multitudinous facts" conducted by the agency, the deliberative process privilege applies. *Montrose Chemical*, 491 F.2d at 68.

This approach to analyzing claims of exemption under exemption 5, which looks to the underlying purpose of the deliberative process privilege, is consistent with the "flexible, common-sense approach" to exemption 5 that has been approved by the Supreme Court. *See Mink*, 410 U.S. at 91, 93 S.Ct. at 837. The Court recognized that, in choosing the language of exemption 5,

Congress sensibly discarded a wooden formulation that could have meant disclosure of manifestly private and confidential policy recommendations simply because the document containing them also happened to contain factual data. That decision should not be taken, however, to

embrace an equally wooden exemption permitting the withholding of factual material otherwise available on discovery merely because it was placed in a memorandum with matters of law, policy, or opinion. It appears to us that Exemption 5 contemplates that the public's access to internal memoranda will be governed by the same flexible, common-sense approach that has long governed private parties' discovery of such documents involved in litigation with Government agencies.

*Id.*

██ Categorically excluding "opinions and recommendations regarding facts or consequences of facts" from exemption 5, as National Wildlife urges, is inconsistent with Supreme Court and Court of Appeals precedent. It also ignores the realities of policymaking. Decisions of government agencies are not made in a vacuum. Policies are formulated to address concrete problems. Which of several competing policies to adopt is a question that requires the policymaker to assess facts and their anticipated consequences. Opinions on facts and their consequences of those facts form the grist for the policymaker's mill. Each opinion as to which of the great constellation of facts are relevant and important and each assessment of the implications of those facts suggests a different course of action by the agency. Before arriving at a final decision, the policymaker may alter his or her opinion regarding which facts are relevant or the likely consequences of these facts, or both. Tentative policies may undergo massive revisions based on a reassessment of these variables, during which the agency may decide that certain initial projections are not reasonable or that the likely consequences of a given course of action have been over- or underestimated. Subjecting a policymaker to public criticism on the basis of such tentative assessments is precisely what the deliberative process privilege is intended to prevent.

## III

In applying this test to the case presented in this appeal, we will review first the draft Forest Plans and draft EISs. We will then discuss the "previews."

## A.

The two draft Forest Plans and the two draft EISs are predecisional. These documents are merely working drafts subject to revision. Once they are in final form, the Forest Service will make them available to the public. The only question concerning the draft Forest Plans and draft EISs is whether their disclosure would reveal the deliberative processes of the Forest Service.

In reviewing the draft Forest Plans and draft EISs, we bear in mind that they reflect a compromise among numerous competing uses of the Wallowa–Whitman National Forest (Forest). The Forest Plan represents the Forest Service's judgment as to the appropriate balance to strike among the conflicting demands placed on the Forest's finite resources. These conflicting demands stem from such varied uses as timber production, livestock grazing, recreation, natural resource conservation, and wildlife preservation, to name but a few. Only by first understanding the ultimate ends to which the Forest Service's deliberations are directed can we adequately judge whether the disputed portions of the draft Forest Plans and draft EISs reflect this deliberative process.

### 1.

██ The pages withheld from the draft Forest Plans contain the following materials: (1) anticipated sources of conflict among the various users of the Forest and the issues deemed vital to resolving these conflicts; (2) the likely environmental consequences of certain uses of the Forest; (3) projected levels of various activities expected from implementation of the Forest Plans; (4) cost-benefit analyses of the proposed Forest Plans; (5) comparisons between the expected levels of a given activity under the Forest Plans and the estimated maximum level of that activity that the Forest is capable of sustaining; (6) proposed utility corridors, timber sale plans,

land ownership plans, and tentative schedules for monitoring and evaluating the achievement of the plan's objectives; and (7) opinions as to those areas of the Forest presenting the most urgent problems and their relative priority for purposes of receiving remedial action.

These materials represent the tentative opinions and recommendations of Forest Service employees on matters instrumental to the formulation of policies governing the allocation of the Forest's resources to competing uses. Statements regarding which issues Forest Service employees consider the most urgent, and what priority should be assigned to each issue, as well as recommendations as to how the various issues can best be resolved, are clearly opinions and recommendations relating to the decisionmaking process. Recommendations on how best to deal with a particular issue are themselves the *essence* of the deliberative process. So long as such recommendations do not represent final agency policy, it is clear that they fall within the deliberative process privilege. Included among the agency's tentative recommendations on how to deal with the various problems confronting the Forest are proposed plans relating to utility corridors, timber sale, and land ownership. Again, such recommended courses of action are protected under exemption 5 so long as they do not represent final agency action. To identify and assign priority to relevant issues lies at the very heart of the decisionmaking process. Because policies are developed to address particular problems, a policymaker must first specify the evils believed to require attention. An agency member's identification of the most important issues is necessarily an opinion—an opinion that will weigh significantly in the formulation of an appropriate course of action. The mere fact that the Forest Service believes that some area of concern creates a problem worthy of some sort of regulation itself reflects a policy judgment that may be "more sensitive and important than the later decisions concerning the precise extent and nature of the regulation." *Wolfe*, 839 F.2d at 775–76. We hold, therefore, that the deliberative process privilege applies to the predecision-

al statements, made by Forest Service employees, which identify and assign priority to the issues deemed relevant to the formulation of policy.

Projected levels of various activities expected from implementation of the Forest Plans, the estimated costs and benefits associated with each activity, and estimates as to the Forest's maximum capacity for sustaining each activity are similarly opinions that figure heavily in the formulation of Forest Service policies. While these opinions might be characterized as opinions on facts or the consequences of facts, such a distinction, as we discussed previously, is not the touchstone for determination of the applicability of exemption 5. As long as these opinions reveal the issues that the Forest Service considers important and provide telling clues as to the Forest Service's proposed course of action in addressing the conflicting demands on the Forest's resources, they are as much a part of the deliberative process as opinions on pure matters of law or policy. *See Wolfe*, 839 F.2d at 774–75 (exemption 5 applies if context in which requested materials are used would reveal the fact that proposals have been made or the timing of the agency's action); *Lead Industries*, 610 F.2d at 84–85 (reports containing feasibility studies, cost benefit analysis, and objective summaries of evidence requiring the author to draw inferences and to weigh the evidence are part of the deliberative process).

2.

Unlike the draft Forest Plans, which focus more or less on a particular proposed course of action, the two draft EISs focus upon the comparison of alternative plans, each emphasizing different objectives and giving priority to different activities in the Forest. The remaining undisclosed portions of the two draft EISs contain the following materials: (1) discussions of the issues that the Forest Service employees believe require resolution during the planning process; (2) the various uses of the Forest that the Forest Service has identified and that the Forest Service intends to consider during planning; (3) various alter-

native Forest Plans considered by the Forest Service, their anticipated environmental impact, and the projected benefits, activities, and costs associated with each alternative; and (4) discussions of "benchmarks," which are the Forest Service's estimates of the maximum level of a given activity that the Forest can sustain, and which are used to measure the efficiency of each alternative plan in achieving the Forest's full economic and aesthetic potential.

As with the materials withheld from the draft Forest Plans, these portions of the draft EISs represent the opinions and recommendations of Forest Service employees on factors that will serve as contributions in the decisionmaking calculus. They constitute the "give-and-take" of the Forest Service and represent the mental processes of the agency in considering alternative courses of action prior to settling on a final plan. Hence, they also fall within the deliberative process privilege of exemption 5.

To the extent that National Wildlife seeks through its FOIA request to uncover any discrepancies between the findings, projections, and recommendations between the draft Forest Plans and draft EISs prepared by lower-level Forest Service personnel and those actually adopted in the final Forest Plan and EIS published by the Forest Service, it is attempting to probe the editorial and policy judgment of the decisionmakers. Materials that allow the public to reconstruct the predecisional judgments of the administrator are no less inimical to exemption 5's goal of encouraging uninhibited decisionmaking than materials explicitly revealing his or her mental processes. *See Dudman Communications,* 815 F.2d at 1568–69; *Russell,* 682 F.2d at 1048–49.

### B.

 In challenging the district court's ruling that the Washington Office previews were exempt from the FOIA, National Wildlife does not argue that the previews were not part of the deliberative process. Indeed, to the extent that these previews provide comments and recommend changes in the draft Forest Plans and draft EISs,

they expose the editorial and policy judgment of the decisionmakers prior to their final decision. Thus, National Wildlife cannot reasonably contend that they are not deliberative. *See Dudman Communications,* 815 F.2d at 1568; *Russell,* 682 F.2d at 1048. Instead, it maintains that these previews were not predecisional documents, but, rather, final statements of Forest Service policy.

The magistrate found that the Washington Office previews "contain recommendations and comments, but are not binding directives." The district court adopted this factual finding, which we now review for clear error.

In challenging the conclusion that the previews are not binding "agency law," National Wildlife correctly points out that exemption 5 does not apply to an agency's final opinions, statements of policy and interpretations definitively adopted by the agency, and any other documents having "the force and effect of law." *NLRB v. Sears, Roebuck & Co.,* 421 U.S. 132, 153, 95 S.Ct. 1504, 1517, 44 L.Ed.2d 29 (1975). To support its argument that the previews represent binding directives with the "force and effect of law," National Wildlife cites certain deposition testimony and portions of four letters to Congressman Weaver which, it argues, show that the previews served as "directions from agency superiors to subordinates to comply with the superiors' view of agency obligations under a … statute," and that the draft plans would have to be altered to conform to these directives.

The Forest Service presents two arguments in response. First, it argues that the references to "direction" in the Weaver letters relate not to anything in the previews themselves, but rather to an *apparently* unrelated Forest Service directive requiring Forest Service officials to conform their analyses to the Ninth Circuit's opinion in *California v. Block,* 690 F.2d 753 (9th Cir.1982), by including roadless land areas. Passages from several of the letters referring specifically to roadless areas seem to support this contention. Other references in the letters to "direction" are at best

ambiguous, and could relate equally to the roadless land directive or to comments in the previews. The mere use of the word "direction" in the Weaver letters thus does not show that the district court clearly erred in finding that the previews did not contain binding directives "with the force and effect of law," since it is not clear that the "directions" referred to in the letters even relate to the comments contained in the previews.

The Forest Service's second response is that the recommendations contained in the previews are nonbinding, serving merely as advice to the Regional Forester, who makes the final decision. This contention is supported both by portions of the affidavit of the Forest Service's planning director Hargreaves and by a portion of one of the Weaver letters. National Wildlife responds that in practice such recommendations are always followed, and we should look to practical reality rather than to procedural technicalities in determining whether a "final decision" has been made; National Wildlife urges us to follow *Schlefer v. United States*, 702 F.2d 233, 237–38, 241 (D.C. Cir.1983) (finding advisory opinions to be definitive and have force of agency law where in practice the "advice" is always followed). There is little in the record to indicate whether Regional Foresters always comply with the Washington Office's "comments" as a practical matter, but Hargreaves's affidavit suggests that they do not necessarily follow them in all cases.

Our *in camera* inspection of the sealed previews, moreover, convinces us that these documents contain statements that are inconsistent with National Wildlife's claim that they embody binding, final statements of agency law. The previews contain general comments of the Washington Office on the quality and completeness of the draft Forest Plans and draft EISs. Many of these comments are nothing more than mundane editorial comments relating to organization, clarity, and precision of language. Still other comments express the reviewer's opinion that a given section of the Forest Plan is ambiguous or incomplete, without suggesting what needs to be done specifically to improve the draft. In-

deed, many of the comments are mere questions from the Washington Office regarding the meaning and purpose of a section or asking whether certain considerations were taken into account by the drafters. Such comments as the foregoing are not, by their very nature, indicative of statements of binding "agency law." On the contrary, these comments are merely opinions, recommendations, and queries aimed at improving the draft Forest Plans and draft EISs.

Equally important to our analysis of those previews is the absence of any indication that, even if the Forest Service incorporated all of the recommendations and addressed all of the concerns of the Washington Office, the draft Forest Plans and draft EISs will have attained final form. There is no evidence that, upon receiving a new draft of these documents, the Washington Office is not free to change its mind, or to recommend further changes, or to opine that certain amendments failed to satisfy the reviewer's criticisms, or to raise altogether new concerns.

We conclude, therefore, that the district court was not clearly erroneous in finding that the Washington Office previews do not constitute statements of final, binding agency policy. These statements thus remain within the deliberative process privilege of exemption 5.

## IV

In conclusion, we hold that the withheld portions of Forest Service's draft Forest Plans and draft EISs reveal its deliberative processes, and, therefore, fall within the "deliberative process" privilege of exemption 5 of the FOIA. We further hold that the Washington Office previews are predecisional, and are thus also entitled to exemption 5's withholding privilege.

AFFIRMED.

PREGERSON, Circuit Judge, concurring:

I concur in the result reached by Judge Wallace. In this case the district court was not clearly erroneous in concluding that the

contested documents were properly withheld under exemption (b)(5) of the Freedom of Information Act (FOIA), 5 U.S.C. § 552(b)(5) (exemption 5). The portions of the draft Forest Plans, draft EISs, and "previews" in question were not factual, but rather were deliberative in nature. They represented analyses of and tentative opinions about issues of concern to the Forest Service—aspects of the decisionmaking process covered by exemption 5. I write separately, however, because the language in the opinion is far broader than necessary or appropriate to decide this case. The majority applies a test developed in a line of District of Columbia Circuit cases that exempts factual materials "from disclosure to the extent that they reveal the mental processes of decisionmakers." Majority opinion at 14112 (citing cases).

Under the majority's so-called "functional" test, FOIA is swallowed up by exemption 5, a result contrary to the plain purpose of the Act. FOIA is a disclosure statute which "seeks to permit access to official information long shielded unnecessarily from public view and attempts to create a judicially enforceable public right to secure such information from possibly unwilling official hands." *Environmental Protection Agency v. Mink*, 410 U.S. 73, 80, 93 S.Ct. 827, 832, 35 L.Ed.2d 119 (1973). For this reason, the Act's exemptions must be narrowly construed. Indeed, as the Senate Committee Report explains, FOIA's purpose is "to establish a general philosophy of full agency disclosure unless information is exempted under clearly delineated statutory language...." S.Rep. No. 813, p. 3, n. 6.

The "functional" test might be read to allow an agency to withhold documents that are purely factual so long as they are "related to the *process* by which policies are formulated." Majority opinion at 1118 (quoting *Jordan v. United States Department of Justice*, 591 F.2d 753, 774 (D.C. Cir.1978)). Because nearly everything an agency generates is somehow related to the deliberative process, careless application of the "functional" test would afford government agencies unrestrained discretion in deciding whether to release materials requested under FOIA. Even though this result is not intended by the majority, the opinion could be misconstrued to protect from disclosure virtually any government document that does not constitute a final decision. Such a result is inconsistent with the stated purpose of FOIA: to provide "a workable formula which encompasses, balances, and protects all interests, yet places emphasis on the fullest responsible disclosure." *Mink*, 410 U.S. at 80, 93 S.Ct. at 832 (quoting S.Rep.No. 813, p. 3).

We should all bear in mind that secret government is abhorrent to democratic values. FOIA reflects Congress' judgment that the people have a right to know how their government actually functions.