AMERICAN FEDERATION OF GOV-
ERNMENT EMPLOYEES, AFL—
CIO, Local 1164 & William Thoms,
Plaintiffs,

v.

UNITED STATES DEPARTMENT OF
HEALTH & HUMAN SERVICES,
Defendant.

No. Civ.A. 98–11321–PBS.

United States District Court,
D. Massachusetts.

Aug. 26, 1999.

Martin R. Cohen, AFGE, Bala Cynwyd, PA, Burton E. Rosenthal, Segal, Roitman & Coleman, Boston, MA, Mark D. Roth, AFGE, Washington, DC, for plaintiffs.

George B. Henderson, U.S. Attorney's Office, Boston, MA, for defendant.

## ORDER

SARIS, District Judge.

After review of the Report and Recommendation on plaintiffs' and defendant's cross-motions for summary judgment (Docket Nos. 2 and 21), dated June 23, 1999, the documents submitted *in camera*, the *Vaughn* index, which states that all separable factual information was disclosed, and the plaintiffs' objections, I accept the recommendation of the Magistrate Judge and order that judgment enter in favor of the defendant. I also agree that the Motion Pursuant to Rule 56(f) for Discovery should be denied for the reasons stated in the order and notice of hearing dated April 29, 1999.

*REPORT AND RECOMMENDATION ON PLAINTIFFS' AND DEFENDANT'S CROSS–MOTIONS FOR SUMMARY JUDGMENT (DOCKET NOS. 21 & 22)*

June 23, 1999

KAROL, United States Magistrate Judge.

Plaintiffs, a union of government employees and one of its local representatives, have sued the United States Department of Health and Human Services ("HHS") under the Freedom of Information Act, 5 U.S.C. § 552 (West 1996 & Supp.1999) ("FOIA"). Plaintiffs seek to compel disclosure of documents concerning a February 1997 Indoor Air Quality ("IAQ") survey conducted at the Social Security Administration's ("SSA") Salem,

Massachusetts office ("the Salem site"). HHS' division of Federal Occupational Health, which is responsible for industrial hygiene in federal office buildings, had engaged a private contractor to conduct the IAQ survey at the request of the SSA's Office of Environmental Policy and Automation Resources ("OEPAR") and pursuant to an inter-agency agreement between HHS and SSA.

The genesis of this suit is the differences between Plaintiffs' recollection of the private contractor's conclusions about the conditions at the Salem site (as reported in a post-survey briefing to site employees) and the contents of HHS' final IAQ survey report. Plaintiffs seek six withheld documents, including drafts and memoranda exchanged among the private contractor, HHS and OEPAR following the site visit pursuant to an HHS/SSA IAQ survey protocol. Plaintiffs see something nefarious in the involvement of OEPAR, the entity presumably responsible for implementation of any recommended changes, in what they claim was to be an objective survey of the environmental conditions at the Salem site. HHS, for its part, claims that the drafts and memoranda fall squarely within FOIA's "deliberative process privilege," a statutory exemption from FOIA's disclosure requirements for "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5) ("Exemption 5").

Pending before the court are the parties' cross-motions for summary judgment. *Plaintiffs' Motion for Summary Judgment,* Docket No. 21; *Defendant's Motion for Summary Judgment,* Docket No. 22. Pursuant to an order issued on April 29, 1999, Defendant has submitted *in camera,* and I have reviewed, the six withheld documents at issue in this case. *Order and Notice of Hearing,* Docket No. 42. I have also reviewed HHS' final report to SSA. *Indoor Air Quality Survey,* attached as Ex. D to *Declaration of William Thoms,*

Docket No. 30. For reasons set forth below, I find that all of the withheld documents are both pre-decisional and deliberative within the meaning of the case law interpreting Exemption 5. Accordingly, they are entitled to protection from disclosure. I therefore recommend that summary judgment enter in favor of Defendant and that Plaintiffs' cross-motion for summary judgment be DENIED.

## I.  Applicable Law

■ The FOIA mandates that agencies make available for public inspection a broad range of information, including the agency's organization, general methodology, rules of procedure, substantive rules, final opinions, and statements of policy and interpretation that have been adopted by the agency. 5 U.S.C. § 552(a)(1)–(2). The FOIA, however, specifically exempts nine categories of documents from its otherwise broad disclosure requirements. 5 U.S.C. § 552(b). Unless documents fall within one of the nine specific exemptions to the disclosure requirement, they are presumed to be available for public inspection. *See* 5 U.S.C. § 552(d). As the FOIA presumes public access to agency information, an agency withholding information must prove entitlement to an exemption. 5 U.S.C. § 552(a)(4)(B); *Providence Journal Co. v. United States Dep't of the Army,* 981 F.2d 552, 556 (1st Cir.1992). The district court undertakes a *de novo* determination as to the validity of an agency's exemption claim. *Providence Journal,* 981 F.2d at 556–57 (*citing Department of Justice v. Reporters Comm. for Freedom of the Press,* 489 U.S. 749, 755, 109 S.Ct. 1468, 103 L.Ed.2d 774 (1989)). Any "[d]oubts are customarily to be resolved in favor of openness." *Irons v. Federal Bureau of Investigation,* 811 F.2d 681, 685 (1st Cir.1987).

■ HHS withholds the disputed documents on the strength of Exemption 5, an exemption for "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other

than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). As Plaintiffs observed at oral argument, it is not immediately apparent how the draft reports, handwritten comments on those reports and memoranda commenting on the drafts come within the plain language of Exemption 5. Nevertheless, in the years since the FOIA's enactment, courts have made clear that Exemption 5 encompasses a "deliberative process privilege," a form of executive privilege designed to protect the "decision-making processes of government agencies." *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 149–150, 95 S.Ct. 1504, 44 L.Ed.2d 29 (1975) ("That Congress had the Government's executive privilege specifically in mind in adopting Exemption 5 is clear. . . ."); *see National Wildlife Fed'n v. United States Forest Serv.*, 861 F.2d 1114, 1116–17 (9th Cir.1988). The privilege protects the quality of administrative decisionmaking by ensuring that it does not take place "in a fishbowl." *Environmental Protection Agency v. Mink*, 410 U.S. 73, 87, 93 S.Ct. 827, 35 L.Ed.2d 119 (1973).

▮ The intended beneficiaries of Exemption 5 include: (1) agency subordinates, who can provide their superiors with candid opinions without fear that those opinions will later be subjected to public ridicule or criticism; (2) the agencies themselves, which are protected against premature disclosure of proposed policies; and (3) the public, which can be confused and misled by dissemination of documents suggesting reasons and rationales for a course of action which were not in fact the ultimate reasons for that action. *Providence Journal*, 981 F.2d at 557; *see City of Virginia Beach v. United States Dep't of Commerce*, 995 F.2d 1247, 1252–53 (4th Cir.1993) (Exemption 5 insulates against chilling effect disclosure would have on agency employees "judged not on the basis of their final decisions, but for matters they considered before making up their minds."). Exemption 5 "was created to prevent the disruption of a free flow of ideas, opinions, advice and frank discussions within agencies concerning their policies and programs." *National Wildlife*, 861 F.2d at 1117 (*quoting Julian v. United States Dep't of Justice*, 806 F.2d 1411, 1419 (9th Cir.1986)).

▮ To establish the privilege, HHS must show that, in "the context in which the materials are used," the documents are both "predecisional" and "deliberative." *Virginia Beach*, 995 F.2d at 1253; *Providence Journal*, 981 F.2d at 557. Predecisional documents are "prepared in order to assist an agency decisionmaker in arriving at his decision." *Virginia Beach*, 995 F.2d at 1253.

▮ Deliberative material "reflects the give-and-take of the consultative process" and the manner in which an agency evaluates possible alternative policies or outcomes. *Virginia Beach*, 995 F.2d at 1253 (*citing Access Reports v. Dep't of Justice*, 926 F.2d 1192, 1196 (D.C.Cir.1991)). A pre-decisional document will qualify as "deliberative" provided that it: "(i) form[s] an essential link in a specified consultative process, (ii) 'reflect[s] the personal opinions of the writer rather than the policy of the agency,' and (iii) if released, would 'inaccurately reflect or prematurely disclose the views of the agency.'" *Providence Journal*, 981 F.2d at 559 (*citing National Wildlife*, 861 F.2d at 1118–19). Although expressions of personal opinion generally render a document "deliberative," segregable factual portions of that document may still be subject to disclosure if they are not so "inextricably intertwined" with the deliberative material that their disclosure would compromise the private remainder of the document. *Id.*

II. Discussion

HHS offers only one justification for withholding the drafts, memoranda and comments: that they are all pre-decisional and deliberative as to what the final IAQ survey should look like. *Memorandum in Support of Defendant's Motion for Sum-*

*mary Judgment* ("Def.'s Mem."), Docket No. 23, at 10.[1] HHS argues further that releasing the drafts themselves would necessarily reveal the substance of the comments and memoranda, as any comparison of the draft and final reports would alert a careful reader to what recommended changes were and were not adopted by HHS. Def.'s Mem. at 13–14.

Defendant is correct that draft documents have frequently been held to be deliberative material because comparing them to final documents can disclose editorial judgments that reflect the agency decisionmaking process. In *National Wildlife*, for example, the Ninth Circuit refused to order disclosure of draft environmental impact statements authored by Forest Service employees. The court observed:

> To the extent that National Wildlife seeks through its FOIA request to uncover any discrepancies between the findings, projections, and recommendations between the draft [reports] prepared by lower-level Forest Service personnel and those actually adopted in the final Forest Plan and EIS published by the Forest Service, it is attempting to probe the editorial policy and judgment of the decisionmakers. Materials that allow the public to reconstruct the predecisional judgments of the administrator are no less inimical to exemption 5's goal of encouraging uninhibited decisionmaking than materials explicitly revealing his or her mental processes.

861 F.2d at 1122; *see also Mobil Oil Corp. v. United States Environmental Protection Agency*, 879 F.2d 698, 703 (9th Cir. 1989) (same); *Dudman Comms. Corp. v. Dep't of the Air Force*, 815 F.2d 1565, 1569 (D.C.Cir.1987) (draft manuscript treating Air Force involvement in South Vietnam held to be both pre-decisional and deliberative); *Russell v. Dep't of the Air Force*, 682 F.2d 1045, 1049 (D.C.Cir.1982) (same).

█ The documents withheld in this case are similar to those in the draft cases discussed above. The handwritten comments by SSA and HHS employees and the memoranda arising from those comments are not final agency policy. They are the suggestions of individual agency employees as to what the final IAQ survey report should look like. Release of these materials would discourage candid discussion within the agency and thereby undermine HHS' ability to perform effectively its assigned function. *See Dudman*, 815 F.2d at 1568. Even the first draft of the report represents the private contractor's view of what form the final IAQ survey should take, not HHS' final statement on the air quality at the Salem site. Releasing the draft would enable a careful reader to determine the substance of HHS' proposed and adopted changes. *See Dudman*, 815 F.2d at 1569.

Moreover, in addition to the chilling effect that disclosure could have on agency employees, the release of incomplete, inaccurate or unsubstantiated information in the drafts could cause harm by providing the public with erroneous information about the conditions at the site. *See Providence Journal*, 981 F.2d at 559. For example, one section of the draft report refers to a set of superseded federal regulations. If the deliberative process privilege is to protect the public's interest in accurate and complete statements of agency positions, an agency must be left to make such changes outside of the public spotlight. *See id.* at 561.

█ Plaintiffs argue that invocation of the deliberative process privilege should be limited to situations in which an agency is engaged in an "essential function." As Plaintiffs would have it, for example, the SSA could withhold drafts and comments relating only to its core mission: the provision of retirement and disability benefits to the citizenry.

I see at least four problems with Plaintiffs' proposed "essential functions" test.

---

1. HHS does not claim, for example, that the drafts were pre-decisional or deliberative as

to any remedial air quality measures SSA might take at the Salem site.

First, Plaintiffs have cited no case law supporting an essential functions test under the FOIA. Plaintiffs stated at oral argument that *Mink* is favorable to their position, but the case fails to hint at the "essential functions" component Plaintiffs propose. One case even rejects a comparable premise that Exemption 5 materials must contain some recommendation regarding law or policy in addition to being pre-decisional and deliberative. *National Wildlife*, 861 F.2d at 1117.

Second, it is exactly the function of the HHS, and particularly its Federal Occupational Health division, to provide occupational health and industrial hygiene services to federal agencies such as SSA/OEPAR. *Declaration of David Eisenhardt*, attached as Ex. 3 to *Defendant's Statement of Material Facts as to Which There is No. Genuine Issue to be Tried*, Docket No. 24, at ¶¶ 1–2.

Third, the essential functions test is inconsistent with the rationale behind the deliberative process privilege. Subjecting agency employees' views to public scrutiny discourages candor whether or not the decision under consideration is one of central importance to the agency. Premature disclosure and public confusion are also injurious to agency functions and decisions, peripheral though they may be. The "fishbowl" process against which the deliberative process guards threatens the quality and integrity of all agency decisionmaking.

Finally, determining what are and are not the essential functions of a government agency adds an additional and unworkable level of complexity to the pre-decisional and deliberative tests that courts presently apply. Is writing history, for example, a more essential function to an armed service, *see Russell*, 682 F.2d at 1047, than the disciplining of its reserve officers? *See Providence Journal*, 981 F.2d at 560 (Army's prosecutorial discretion is "no less an agency function than the formulation or promulgation of agency disciplinary policy").

■ The government acknowledged at oral argument that its position—that the draft IAQ survey is predecisional and deliberative of the content of the final IAQ survey—would justify extending deliberative process protection to almost all, if not all, draft materials. If this were the case, I would have some concern that Exemption 5 had swallowed FOIA's presumptive rule of disclosure. *Cf. National Wildlife*, 861 F.2d at 1124 (Pregerson, J., concurring) (government agencies could be afforded unrestrained discretion in deciding whether to disclose FOIA materials "because nearly everything an agency generates is somehow related to the deliberative process"). We have not arrived at this daunting moment, however, for two reasons. First, as the D.C. Circuit observed in *Dudman*, "if a person requests particular factual material, . . . an agency cannot withhold the material merely by stating that it is in a draft document. In such a case, the agency will usually be able to excise the material from the draft document and disguise the material's source, and thus the agency will usually be able to release the material without disclosing any deliberative process. When the agency can take such steps, it may not withhold the information under Exemption 5." 815 F.2d at 1569. This is precisely what HHS did in this case, providing several appendices containing segregable factual information to Plaintiffs.

Second, and more importantly here, my *in camera* review of the contested documents reveals no attempt by the government to withhold adverse facts from Plaintiffs. As HHS has averred throughout the litigation, "none of the withheld documents, including the draft reports, contains any factual information concerning conditions at the Salem [site] that is not also included in the final Indoor Air Quality Report." Def.'s Mem. at 5.[2]

---

**2.** This would be a much more difficult case if the government were withholding adverse information from SSA employees.

110

Plaintiffs are left then to stand on the proposition that "secret government" is abhorrent to democratic values. *Plaintiffs' Memorandum of Reasons in Support of their Motion for Summary Judgment,* Docket No. 25, at 11. Few could dispute this maxim, but it cannot take Plaintiffs beyond the statutory exemption provided under the FOIA and the case law interpreting it. For the reasons set forth above, I find that the contested drafts, memoranda and handwritten comments thereon are protected by the deliberative process privilege. I therefore recommend that summary judgment enter in favor of the Defendant.

### III. Conclusion

For the reasons set forth above, I recommend that Defendant's motion for summary judgment (Docket No. 21) be GRANTED and that Plaintiffs' cross-motion for summary judgment (Docket No. 22) be DENIED. Judgment should accordingly enter in favor of Defendant.

### IV. IMPORTANT NOTICE OF RIGHT TO OBJECT AND WAIVER OF RIGHT TO APPEAL FOR FAILURE TO DO SO WITHIN TEN DAYS

The parties are hereby advised that under the provisions of Rule 3(b) of the Rules for United States Magistrates in the United States District Court for the District of Massachusetts, any party who objects to these proposed findings and recommendations must file a written objection thereto with the Clerk of this Court WITHIN 10 DAYS of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the proposed findings, recommendations, or report to which objection is made and the basis for such objections. The parties are further advised that the United States Court of Appeals for this Circuit has indicated that failure to comply with this rule shall preclude further appellate review by the Court of Appeals of the District Court's order entered pursuant to this Report and Recommendation. *See United States v. Valencia–Copete,* 792 F.2d 4, 5–6 (1st Cir.1986); *Scott v. Schweiker,* 702 F.2d 13, 14 (1st Cir.1983); *United States v. Vega,* 678 F.2d 376, 379 (1st Cir.1982); *Park Motor Mart, Inc. v. Ford Motor Co.,* 616 F.2d 603, 605 (1st Cir.1980); *see also Thomas v. Arn,* 474 U.S. 140, 148–149, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985), reh'g denied, 474 U.S. 1111, 106 S.Ct. 899, 88 L.Ed.2d 933 (1986).