**GREENPEACE, American Oceans Campaign, and Sierra Club, Plaintiffs,**

**v.**

**NATIONAL MARINE FISHERIES SERVICE, and William M. Daley, in his official capacity as Secretary of the Department of Commerce, Defendants,**

**At–Sea Processors Association, United Catcher Boats, Aleutians East Borough, and Westward Seafoods, Inc., et al., Intervenor–Defendants.**

**No. C98–492Z.**

United States District Court, W.D. Washington.

April 11, 2000.

Stanley, Juneau, AK, for Aleutians East Borough, intervenor.

Brian C. Kipnis, U.S. Attorney's Office, Seattle, WA, Michael J. Robinson, Anthony P. Hoang, U.S. Dept. of Justice, Gen. Litigation Sec., Environment Div., Washington, DC, Lyn Jacobs, U.S. Department of Justice, Environmental & Natural Resources, Washington, DC, for National Marine Fisheries Service, William M. Daley, in his official capacity as Secretary of the Dept of Commerce, defendants.

James Alexander Smith, Jr., Smith & Leary, Seattle, WA, George J. Mannina, Jr., Gary C. Adler, O'Connor & Hannan, Washington, DC, for Westward Seafoods Inc., Wards Cove Packing Company, North Pacific Processors Inc., Nelbro Packing Company, Unisea Inc., Peter Pan Seafoods Inc., Kodiak Salmon Packers, Inc., Alyeska Seafoods Inc., Western Alaska Fisheries Inc., Kanaway Seafoods Inc., Royal Viking Inc., Morning Star LP, Great Pacific Limited Partnership, Pacific Knight LLC, Unalaska City of, intervenor-defendants.

Linda Rae Larson, Heller Ehrman White & McAuliffe, Seattle, WA, for United Catcher Boats, intervenor-defendant.

Jay H. Zulauf, Christopher S. McNulty, Mundt MacGregor, Seattle, WA, Eldon V.C. Greenberg, Garvey, Schubert & Barer, Washington, DC, for AT–SEA Processors Association, intervenor-defendant.

## ORDER

ZILLY, District Judge.

### I.  INTRODUCTION

Greenpeace, American Oceans Campaign, and the Sierra Club ("plaintiffs") brought suit under the Endangered Species Act (ESA) challenging the National Marine Fisheries Service's (NMFS's) North Pacific Fishery Management Plans for the groundfish fisheries in the Bering Sea and Gulf of Alaska. Plaintiffs contend these fisheries, as authorized by the Fishery Management Plans,

Patti A. Goldman, Earthjustice Legal Defense Fund, Seattle, WA, Eric Paul Jorgensen, Janis Searles, Earthjustice Legal Defense Fund, Juneau, AK, Douglas A. Ruley, Earthjustice Legal Defense Fund, Juneau, AK, Peter Van Tuyn, Jack K. Sterne, Trustees for Alaska, Anchorage, AK, for Grenpeace, American Oceans Campaign, Sierra Club, plaintiffs.

Marc Slonim, Ziontz, Chestnut, Varnell, Berley & Slonim, Seattle, WA, Michael A. D.

jeopardize endangered Stellar sea lions and adversely modify sea lion critical habitat.[1]

The matter is currently before the Court on NMFS's motion for reconsideration, docket no. 376. NMFS seeks reconsideration of this Court's Order filed February 2, 2000 granting in part plaintiffs' motion to compel the production of documents withheld from the Administrative Record. *See* docket no. 375. By Order, dated February 24, 2000, the Court stayed production of the disputed documents and requested additional briefing. *See* docket no. 385. Having fully considered the submissions of the parties, the Court now DENIES the motion for reconsideration, docket no. 376. NMFS is ordered to produce the disputed documents within 10 days of the filing of this Order.

## II. BACKGROUND

On December 3, 1998, NMFS issued a Biological Opinion examining the impact of the North Pacific pollock and mackerel fisheries and related fishery management measures on endangered Stellar sea lions. The Biological Opinion concluded that the pollock fishery as proposed would result in jeopardy and adverse modification to the Stellar sea lion and its critical habitat. Accordingly, NMFS proposed "reasonable and prudent alternatives" (RPAs), which constituted the alternative management measures by which NMFS believed the pollock fishery could be implemented consistent with Section 7 of the ESA. On cross-motions for summary judgment, this Court held the proposed RPAs "arbitrary and capricious" because NMFS had failed to adequately explain how the proposed alternate measures would avoid jeopardy and adverse modification. *See Greenpeace,* 55 F.Supp.2d at 1268–69. By Order, dated August 6, 1999, the Court remanded the December 3, 1998 Biological Opinion to NMFS to prepare and issue Revised Final Reasonable and Prudent Alternatives (RFRPAs) under Section 7 of the ESA. *See* docket no. 272.

On October 15, 1999, NMFS issued the RFRPAs and, on November 8, 1999, produced the formal Administrative Record ("Record"). However, NMFS withheld numerous documents from the formal Record. Plaintiffs then moved to compel production of 23 of the 33 documents withheld. *See* docket 353. The documents in question were prepared by NMFS scientists and staff in connection with the development of the RFRPAs. In general, the documents contained observations and criticisms of the draft RFRPAs. *See e.g.,* document 52 (T. Loughlin's candid interpretation of distances of foraging trips and criticism of a draft RFRPA); Doc. 53 (K. Lind's criticisms of a section of the draft RFRPA's remand document analyzing the timing of, and daily catches in, the pollock fisheries.)[2]

NMFS opposed the motion to compel, asserting the documents were protected from discovery under the attorney-client privilege, the work product privilege, and the deliberative process privilege. Prior to ruling on the motion, the Court ordered NMFS to produce the documents under seal for *in camera* review by the Court. The Court also ordered NMFS to file a copy of the same documents showing any proposed redactions because of the attorney-client privilege or the deliberative process privilege. *See* docket no. 368. The portions proposed to be redacted were to indicate the basis for the proposed redaction. *See id.* Following its *in camera* review, the Court granted in part plaintiffs' motion to compel. *See* docket no. 375. The Court concluded that two documents fell within the attorney-client privilege. However, the Court concluded that none of the remaining 21 documents fell within any asserted privilege. The Court, therefore, ordered these documents produced. *See* docket no. 375.

NMFS moves the Court to reconsider the Court's conclusions with respect to the deliberative process privilege only.

---

1. For a detailed description of the relevant legal and factual background in this case, *see Greenpeace v. National Marine Fisheries Service,* 80 F.Supp.2d 1137 (W.D.Wash.2000); *Greenpeace v. National Marine Fisheries Service,* 55 F.Supp.2d 1248 (W.D.Wash.1999).

2. A detailed list of the disputed documents appears in Supplement # 5 to the Administrative Record, docket no. 336, which is incorporated by reference. All references to document numbers are the numbers set forth in Supplement # 5.

## III. DISCUSSION

The deliberative process privilege shields from disclosure intra-governmental communications relating to matters of law or policy. *See National Wildlife Federation v. U.S. Forest Service,* 861 F.2d 1114, 1116–17 (9th Cir.1988). The underlying purpose of the privilege is to protect the quality of governmental decision-making by maintaining the confidentiality of advisory opinions, recommendations, and deliberations that comprise part of the process by which government formulates law or policy. *See e.g. National Wildlife Federation,* 861 F.2d at 1117; *Petroleum Information Corp. v. U.S. Dept. of Interior,* 976 F.2d 1429, 1435 (D.C.Cir.1992). The accepted rationale is that frank and open discussions within governmental agencies would be "chilled" if the personal opinions and ideas of government personnel involved in the decision-making process were subject to public scrutiny. *See id.;* 26A Wright and Graham, Federal Practice & Procedure, Evidence § 5680 at 131–32 (1992).

Like all evidentiary privileges that derogate a court's inherent power to compel the production of relevant evidence, the deliberative process privilege is narrowly construed. *Redland Soccer Club v. Dept. of Army of the U.S.,* 55 F.3d 827, 856 (3rd Cir.1995); *Mobil Oil Corp. v. Dept. of Energy,* 102 F.R.D. 1, 5 (N.D.N.Y.1983) (*"Mobil Oil II"*). In order to qualify for the privilege, a document must be both "predecisional" and "deliberative," meaning it must actually be related to the process by which policies are formulated. *National Wildlife Federation,* 861 F.2d at 1117. Because the privilege "is centrally concerned with protecting the process by which *policy* is formulated," only those materials that bear on the formulation or exercise of agency policy-oriented judgment fall within the privilege. *Petroleum Information Corp.,* 976 F.2d at 1435 (emphasis original). Thus, factual material is protected only to the extent it reflects an agency's "preliminary positions or ruminations about how to exercise discretion on some policy matter." *Id.* "Conversely, when materials could not reasonably be said to reveal an agency's or official's mode of formulating or exercising *policy-implicating judgment,* the deliberative process privilege is inapplicable." *Id.* (emphasis added). As such, information that does not disclose the deliberative process, communications unrelated to the formulation of law or policy, and routine reports are not shielded by the privilege. *See e.g., National Wildlife,* 861 F.2d at 1117; *Petroleum Information Corp.,* 976 F.2d at 1435; *Soto v. City of Concord,* 162 F.R.D. 603, 612 (N.D.Ca.1995); *Kelly v. City of San Jose,* 114 F.R.D. 653, 658–59 (N.D.Ca. 1987); *Seafirst Corp. v. Jenkins,* 644 F.Supp. 1160, 1163 (W.D.Wash.1986); *Mobil Oil II,* 102 F.R.D. at 5–6.

The initial burden of establishing the applicability of the privilege is on the government. *Redland Soccer Club,* 55 F.3d at 854; *Mobil Oil Corp. v. Dept. of Energy,* 520 F.Supp. 414, 416 (N.D.N.Y.1981) (*"Mobil Oil I"*). In addition to showing that withheld documents fall within the claim of privilege, the government must comply with formal procedures necessary to invoke the privilege. *Exxon Corp. v. Dept. of Energy,* 91 F.R.D. 26, 43–44 (N.D.Texas 1981); *Mobil Oil I,* 520 F.Supp. at 416. Blanket assertions of the privilege are insufficient. *Exxon Corp.,* 91 F.R.D. at 43. Rather, the agency must provide "precise and certain" reasons for preserving the confidentiality of designated material. *Mobil Oil I,* 520 F.Supp. at 416.

Finally, even where the privilege is properly asserted, it is not absolute and the court must determine whether the need for the evidence overrides the government's interest in non-disclosure. *See F.T.C. v. Warner Comm. Inc.,* 742 F.2d 1156, 1161 (9th Cir.1984). For example, the privilege may be inapplicable where the agency's decision-making process is itself at issue. *See Mr. and Mrs. "B" v. Board of Ed. of Syosset Cent. Sch. Dist.,* 35 F.Supp.2d 224, 230 (E.D.N.Y.1998); *Burka v. N.Y.C. Transit Authority,* 110 F.R.D. 660, 667 (S.D.N.Y. 1986).

In its prior Order, docket no. 375, this Court concluded the deliberative process privilege did not apply to the documents in

question because the RFRPA determination is essentially one of fact rather than one of law or policy. In its motion for reconsideration, NMFS contends the Court's conclusion was in error. *See* Memo in Support of Reconsideration at 7, docket no. 377. Relying exclusively on *National Wildlife Federation,* 861 F.2d 1114, NMFS argues that in determining whether particular documents fall within the privilege "a reviewing court should focus on whether the document in question is part of the *deliberative process,* rather than whether the material is essentially deliberative or factual." *Id.* (emphasis original). NMFS misreads this Court's prior Order and misapplies *National Wildlife Federation.*

■ Contrary to NMFS's reading of this Court's prior Order, the Court *did not* conclude the particular documents at issue contained purely factual information and, therefore, did not fall within the privilege. Rather, the Court focused on the nature of the agency *process* when making a determination of jeopardy or adverse modification under the ESA. The Court concluded that a determination of jeopardy and adverse modification under the ESA was not a process that implicated NMFS's policy-oriented judgment. *See* docket 375. As such, the Court's analysis did not focus on the content of specific documents, but was based on the nature of the agency process as a whole. The Court reiterates that conclusion here, and underscores that the deliberative process privilege is limited to protecting only those agency processes by which *policy* is formulated. *See e.g., National Wildlife,* 861 F.2d at 1117; *Petroleum Information Corp.,* 976 F.2d at 1435.

■ A determination of jeopardy and adverse modification under the ESA requires the agency to collect scientific facts and data, and to reach expert scientific conclusions based on these facts. However, the fact that scientific expertise is brought to bear "does not transform interpretations of facts into communications protected by the deliberative process privilege." *Seafirst Corp. v. Jenkins,* 644 F.Supp. 1160, 1163 (W.D.Wash.

1986). In order to be protected, expressions of expert opinion and professional judgment must relate to the exercise of policy-oriented judgment. *See e.g., id.* (expressions of expert opinion unrelated to policy decision not protected); *Petroleum Information Corp.,* 976 F.2d at 1437 (material not associated with significant policy decision was not "deliberative"); *Parke, Davis & Co. v. Califano,* 623 F.2d 1, 6 (6th Cir.1980) (expert opinions of agency scientists and medical personnel applying FDA regulations were unconnected to policy decisions of agency and not protected). Section 7 of the ESA does not require, nor permit, discretionary policy-making. A determination of jeopardy or adverse modification is limited to objective, fact-based scientific conclusions. Thus, as the Court previously concluded, the process as a whole is not "deliberative" within the meaning of the privilege.

*National Wildlife Federation* does not affect this Court's reasoning.[3] In that case, the Ninth Circuit adopted a "functional" approach to determining whether the deliberative process privilege applied to any particular document. 861 F.2d at 1118–19. Under this approach, application of the privilege is not tied to the type of information secreted in a document. Accordingly, the privilege applies if disclosure of factual information would reveal the agency's decision-making process. *See id.* As the Ninth Circuit's opinion makes clear, however, a "functional" analysis does not obviate the need to determine whether agency policymaking is implicated in the first instance. Thus, the Court in *National Wildlife Federation* expressly pointed out how each document related to some discretionary, policy-oriented judgment of the agency. *See id.* at 1121–23. For example, the *National Wildlife* Court concluded that the documents at issue there "represent the tentative opinions and recommendations of Forest Service employees on matters instrumental to the formulation of policies governing the allocation of the Forest's resources to competing uses." *Id.* at 1121. That simply is not the case here

---

**3.** The Court notes that *National Wildlife Federation* is a FOIA case and the opinion relies extensively on interpretations of the Congressional

Record underlying the adoption of FOIA exemption 5. Such legislative history is, of course, irrelevant in the present context.

where the process itself is unrelated to any discretionary policy-making. The Court's focus in this case is not on the specific contents of the documents, but on the nature of the agency's task in general. In this context, the "functional" approach adopted in *National Wildlife Federation* is inapposite to the Court's conclusion.

To the extent the RFRPA determination potentially implicates some discretionary judgment in the sense that NMFS could choose between various alternative measures, NMFS has failed to carry its burden of proving the applicability of the privilege. To claim the privilege, an agency must "specifically designate and describe the information that is purportedly privileged and give 'precise and certain' reasons for preserving the confidentiality of the requested information." *Mobil Oil I*, 520 F.Supp. at 416. In its Order directing NMFS to produce the disputed documents for *in camera* review, the Court expressly directed NMFS to designate those portions of the documents it considered privileged and to specifically indicate the basis for applying the privilege to any information so designated. *See* docket 368. Rather than provide the particularized explanation that the Court requested, NMFS continued to press a blanket claim of privilege. Blanket assertions of the privilege are insufficient. *Exxon Corp.*, 91 F.R.D. at 43. Without indicating any specific, policy-oriented communication nor proffering any cogent reason for protecting it, the bare assertion that internal agency discussions will be "chilled" is nothing but a legal platitude asserted in the abstract.

## IV.  CONCLUSION

The Court reiterates its prior conclusion that the deliberative process privilege does not apply to shield an analysis of jeopardy and adverse modification under the ESA. Under the ESA, any analysis under these two standards is essentially a factual rather than a legal or policy determination. To the extent NMFS's determinations may have included some policy-oriented judgment, NMFS has failed to carry its burden of proof. Accordingly, NMFS is directed to produce the documents in question within 10 days of the filing of this Order.

IT IS SO ORDERED.